WHITELEATHER, APPELLANT, *v.*
YOSOWITZ, APPELLEE.

(No. 45864—Decided July 5, 1983.)

*Mr. F. M. Apicella,* for appellant Russell J. Whiteleather.

*Mr. Marshall I. Nurenberg,* for appellee Gerald M. Yosowitz, M.D.

MARKUS, J. Plaintiff-patient appeals from a summary judgment dismissal of his professional liability suit, in which he claims that defendant-physician negligently caused and thereafter failed to diagnose and treat his post-operative knee infection. He contends that genuine issues of material fact remained unresolved, and that the court denied him a reasonable opportunity to obtain contrary evidentiary materials. If the present record contained all the evidentiary material, we would affirm the trial court's judgment. However, we believe that patient should be afforded the additional requested opportunity to produce further evidentiary materials, so we reverse and remand with instructions.

The parties provided the following materials for the court's consideration in deciding defendant's summary judgment motion: the pleadings, an affidavit by defendant-physician in which he expresses expert opinions, an affidavit by defendant's expert in which that witness expresses opinions, an affidavit by the plaintiff-patient, answers to interrogatories by the plaintiff-patient, letter reports from two later treating physicians and defendant's expert, and defendant's office records. Neither party objected to qualifications of any physician involved to express expert opinions, to the identification of the defendant's office records, or to the letter form used to supply some

medical data and opinions. Therefore, the trial court properly considered all of these materials, despite their failure to comply strictly with Civ. R. 56(E).

Collectively, these materials established certain uncontradicted facts. Plaintiff sustained an injury to his right knee, for which he was subsequently treated by defendant, with surgical repair for certain internal structures. In the course of that surgery, defendant used silk sutures and a stainless steel staple to stabilize part of those structures. Approximately eight months after that surgery, plaintiff consulted a second physician who diagnosed "a post-operative infection in the operative wound which had gone on to sterile abscess formation." The second physician then hospitalized plaintiff for additional surgery relating to that reported condition. Approximately four months later, plaintiff developed further infectious complications in his right leg which required additional care by the second physician and others.

Plaintiff's answers to interrogatories and his affidavit described complaints of pain, swelling, and elevated temperature for his right knee, when he twice consulted defendant approximately six months following the original surgery. He further described symptoms of pain, swelling, redness, tenderness, and warmth at that area during most or all of his nine visits to defendant's office over the seven months following the original hospitalization. Defendant's office records and defendant's affidavit report varying stiffness, pain, swelling, and effusion in the knee joint during those visits, for which he provided aspiration of fluids, steroid injections, a knee brace, and a course of exercises. Defendant's affidavit denies observing "any of the signs and symptoms of infection, such as severe pain and swelling, inflammation, fever, extreme tenderness, or purulent drainage or effusion."

Plaintiff's complaint asserts:

"4. As a result of the surgical procedure and/or follow-up care and misdiagnosis of the defendant, the plaintiff suffered an infection which resulted in abscess formation, resulting in unnecessary pain and suffering and additional surgery.

"5. Defendant negligently failed to follow the customary and usual skill and procedures in regular use by members of his profession and negligently misdiagnosed the subsequent infection to the plaintiff's knee."

Plaintiff's answers to interrogatories supplemented the complaint language:

"2. The defendant was negligent in his surgical technique and follow-up care. The defendant failed to properly diagnose and correct an infection secondary to the operation, which festered for several months without detection by the defendant. The defendant provided improper treatment for dealing with the plaintiff's swelling and pain."

The affidavit by defendant-physician states:

"12. He is aware, through his experience and training as an orthopedic surgeon, that post-operative wound infections are a recognized complication of orthopedic surgery, especially in those cases wherein a foreign body (such as a prosthetic device or staple) is left implanted in the patient's body.

"13. Based upon his medical and surgical background and experience, it is his opinion that he exercised that degree of skill, care, and diligence required of him by the recognized standards of the medical community in his treatment of plaintiff Russell Whiteleather."

Defendant's expert witness made the following statement in his letter report:

"Mr. Whiteleather did develop a localized infection around the staple approximately eight months after surgery. This, while not common, is certainly a possibility any time a large foreign body is permanently imbedded in a patient. I do not think, however, that the use of the staple can be criticized, since as I men-

tioned previously this is oftentimes the most satisfactory technical means of reattaching the avulsed tendinous or ligamentous structures at the time of surgical repair.

"In summary, therefore, it is my professional opinion that Dr. Yosowitz' surgical approach to this severe knee problem was quite appropriate; that the surgical management was certainly within the accepted standards of orthopedic care; that the post-operative management of the patient was certainly within the bounds of normal orthopedic procedure and that the only criticism which might be leveled at Dr. Yosowitz, namely, that he failed to obtain a culture of the knee joint fluid at the time of the steroid injections, is really irrelevant, since the subsequent infection which occurred was not actually related to the knee joint itself. I don't think there is any evidence whatsoever in any of the hospital records or the records of any of the physicians involved that supports allegations of malpractice, negligence or improper treatment on the part of Dr. Yosowitz."

That same expert expressed the following opinions in his affidavit:

"5. Based upon his experience and training as an orthopedic surgeon, he is aware that post-operative wound infections are a recognized complication of orthopedic surgery, and that they will occur in a small percentage of case [sic] even when the highest degree of medical care has been practiced.

"6. As stated in his report, he found no evidence of inappropriate care on the part of Dr. Gerald M. Yosowitz in his treatment of Russell Whiteleather, and furthermore found that Dr. Yosowitz exercised that degree of skill and care required by the recognized standards of the medical community in rendering care to this plaintiff."

In response to the quoted expert opinions, plaintiff relied upon the letter reports from later physicians and descriptions of his symptoms in his affidavit and

defendant's office records. However, none of these materials expressed an opinion whether defendant's care was negligent.

I

Plaintiff's first assigned error claims that summary judgment should have been denied, on the ground that "there is genuine issue as to material fact and inferences which may be properly drawn therefrom."

He apparently contends that conflicting evidence about his post-operative symptoms create a genuine issue of material fact.

Summary judgment must be denied unless the evidentiary materials demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C). That standard frequently precludes summary judgment in negligence actions where the trier of fact must evaluate conduct as negligent or nonnegligent, even when the conduct is undisputed. See, *e.g., Croley* v. *Matson Navigation Co.* (C.A. 5, 1970), 434 F.2d 73; *Hughes* v. *American Jawa, Ltd.* (C.A. 8, 1976), 529 F.2d 21; *Rogers* v. *Peabody Coal Co.* (C.A. 6, 1965), 342 F.2d 749.

Similarly, proximate cause issues are seldom resolvable by summary judgment. See, *e.g., Burgard* v. *Eff* (1965), 1 Ohio App. 2d 483 [30 O.O.2d 503]. Summary judgment in tort cases is more commonly reserved for affirmative defenses which are established as a matter of law. See, *e.g., Benjamin* v. *Deffet Rentals* (1981), 66 Ohio St. 2d 86 [20 O.O.3d 71] (assumption of risk).

However, professional liability cases depend upon expert evaluation of allegedly negligent conduct, unless the standard of care is sufficiently obvious that nonprofessionals can reasonably evaluate that conduct. Compare *Burrage* v. *Fairview General Hosp.* (Dec. 13, 1979), Cuyahoga App. No. 40123, unreported (expert testimony required to evaluate

physician's choice of alternative operative procedures and his techniques for cast removal), with *Hill* v. *Rambasek* (Dec. 20, 1979), Cuyahoga App. No. 39845, unreported (expert not required to show negligence in permitting patient to sit up suddenly during eye surgery).

In this case, the standard of care concerns selection of operative fixation devices, post-operative surveillance, and diagnosis and treatment for post-operative infections. We conclude that such matters are beyond the general knowledge of nonprofessionals. Therefore, expert testimony must be provided to permit any evaluation of that conduct.

Ordinarily, a plaintiff need not supply evidentiary materials supporting his claim, in order to avoid an adverse summary judgment, unless and until the defendant provides evidentiary materials which negate the plaintiff's claim. *Rainey* v. *Harshbarger* (1963), 7 Ohio App. 2d 260 [36 O.O.2d 374]. The nonmoving party has no burden of proof in resisting a motion for summary judgment, regardless of that party's burden of proof at trial. However, the nonmoving party has a burden of rebuttal to supply evidentiary materials supporting his position, when the moving party presents evidentiary materials which deny that claim. Cf. *Rayburn* v. *J.C. Penney Outlet Store* (1982), 3 Ohio App. 3d 463. In that situation, the nonmoving party cannot rely on bare pleadings unsupported by evidentiary material. Civ. R. 56(E); *Benjamin* v. *Deffet Rentals, supra.*

In this case, defendant's summary judgment motion was supported by two affidavits from apparently qualified experts which expressly deny any negligence by defendant. The affidavit submitted by defendant, himself, may be insufficient to justify summary judgment, because it seemingly relies upon defendant's denial that post-operative infection symptoms were observable. Plaintiff's affidavit and answers to interrogatories assert that those symptoms were present when defendant was consulted. While the decision whether those symptoms signal an active infection may well require expert testimony, their presence or absence could be the subject of nonexpert observations. To the extent that the defendant's own affidavit depends upon the absence of such observable symptoms, his expert conclusions may be sufficiently fallible to exclude its use for summary judgment.

However, defendant's expert witness denies that defendant was negligent, even if those symptoms were observable and did suggest the presence of an infection. No evidentiary materials contradict that expert opinion which denies negligence. Consequently, summary judgment would be proper, if no further evidentiary materials could be reasonably supplied. Cf. *Stover* v. *Evans* (Feb. 13, 1981), Hancock App. No. 5-80-36, unreported; *Jelenic* v. *Youngstown Hospital Assn.* (Oct. 31, 1979), Mahoning App. No. 79 CA 20, unreported.

Plaintiff complains that any requirement to supply expert opinions will permit a summary judgment motion to serve as a mini-trial. For the reasons already stated, that requirement for rebuttal expert evidence is proper in this case. Further, that requirement imposes no greater burden on plaintiff than the obligation already established by Local Rule 21 of the Cuyahoga County Court of Common Pleas:

"(B)  * * * Since Ohio Civil Rule 16 authorizes the Court to require counsel to exchange the reports of medical and expert witnesses expected to be called by each party, each counsel shall exchange with all other counsel the written reports of medical and expert witnesses he expects to testify and the Pretrial Statements shall indicate compliance with this provision. Should a party intend to call an expert and has not procured a written report from said witness, he shall so indicate such fact in his pretrial statement stating the name and address of the expert and the subject of his expertise

together with the reason for his non-receipt of such report.

"(C) Expert witnesses whose reports have not been furnished to opposing counsel prior to the pretrial held within sixty (60) days before trial, will not be permitted to testify at the trial, except where a party has not received a written report from such expert witness and has fully complied with [the above disclosure]."

This court has previously upheld the validity and enforceability of that rule. *Brookpark Bldg., Inc.* v. *Royalton Auto Body & Repair* (July 3, 1980), Cuyahoga App. No. 41421, unreported.

Plaintiff's first claimed error is overruled.

## II

Plaintiff's second claimed error complains that he was not afforded additional time in which to supply contrary evidentiary material. He suggests that he might obtain evidentiary rebuttal to defendant's motion by a deposition of the defendant or from a presently unidentified expert. If plaintiff can obtain admissions by defendant in a deposition, they could be relevant to the applicable standard of care. Cf. *Oleksiw* v. *Weidener* (1965), 2 Ohio St. 2d 147, syllabus [31 O.O.2d 267]. A suitable affidavit or deposition from plaintiff's prospective expert might rebut defendant's evidentiary materials sufficiently to present a genuine issue of material fact.

Civ. R. 56(F) authorizes the trial court to delay decision on a summary judgment motion while the nonmoving party gathers necessary rebuttal data. Generally, the trial court has discretion to determine whether such additional time is appropriate. See *S.E.C.* v. *Spence & Green Chemical Co.* (C.A. 5, 1980), 612 F.2d 896. However, resolution of a controversy by summary judgment is disfavored whenever there is a realistic possibility that genuine issues of material fact will require jury consideration. Therefore, that discretion should be exercised liberally in favor of a nonmoving party who proposes any reasonable interval for the production of those materials. Cf. *Tucker* v. *Webb Corp.* (1983), 4 Ohio St. 3d 121.

In this case, new counsel undertook plaintiff's representation after defendant's summary judgment motion had been filed. At new counsel's request, the trial court granted extensions of time to file opposing memoranda and evidentiary data, and thereafter modified that extension to afford some additional time. Plaintiff's appellate brief asserts that the extensions afforded plaintiff's new counsel only three days in which to file such material after receiving actual notice of the extension order, and only three days after receiving actual notice of the later modification. We have no reason to discount that professional representation, particularly since it is supported by copies of dated postcard notices received by that counsel. When plaintiff's new attorney requested an additional thirty days to supply such responsive materials, defendant filed a written response to plaintiff's motion, in which defendant expressly acquiesced in plaintiff's request. Nevertheless, the trial court denied the motion for further time and granted defendant's summary judgment motion.

In these circumstances, we believe that plaintiff should have been allowed the requested additional time. Cf. *Alghanim* v. *Boeing Co.* (C.A. 9, 1973), 477 F.2d 143. Plaintiff's second assigned error has merit. Therefore, we reverse the trial court's summary judgment with instructions to allow plaintiff at least thirty days for submission of any additional rebuttal materials. If plaintiff fails to supply suitable rebuttal evidence within the allowed time, summary judgment should be re-entered.

The trial court's judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PARRINO, P.J., and PRYATEL, J., concur.