**BARNETT, Grdn.**

v.

**UNIVERSITY OF CINCINNATI HOSPITAL**

Court of Claims of Ohio.

No. 96–10614.

Decided Sept. 30, 1998.

*Cliff G. Linn,* for plaintiff.

*Betty D. Montgomery,* Attorney General, and *Larry Y. Chan,* Assistant Attorney General, for defendant.

J. WARREN BETTIS, Judge.

In her complaint, plaintiff Lynda Barnett alleges that defendant was negligent in its medical care of plaintiff's ward, Margaret Thomas, and that its negligence was the proximate cause of a fall that Thomas suffered while under defendant's care. Defendant denies any liability to plaintiff.

This matter came to trial on the sole issue of liability. The findings and conclusions herein are derived from the documents and pleadings in the case file, evidence at trial, and the presentations by both parties.

The court finds that the following facts were proven by a preponderance of the evidence. In 1995, Thomas was eighty-two years old. She lived independently; however, her family began to notice changes in her behavior, such as irrationality, forgetfulness, and an impaired perception of time. Due to these mental changes, her family sought the assistance of a social worker.

On October 4, 1995, plaintiff and the social worker tried to persuade Thomas to keep a previously scheduled doctor's appointment. Thomas refused to go and

**30**

became threatening. The social worker called the police, who arrived and transported Thomas to the University of Cincinnati Medical Center. Defendant admitted Thomas and diagnosed her condition as dementia with agitation. During the following forty-eight hours, Thomas was polite and cooperative. On October 6, 1995, at 7:00 a.m., she attempted to get out of bed and slipped on urine that was present on the floor. As she slipped, a nurse grabbed her arm to prevent further injury. Thomas became agitated. The nurse calmed her, administered a prescribed sedative, Ativan, and placed her in a "geri-chair." A geri-chair is a chair with a table mounted across its front that is used for the safety of geriatric patients. Thomas was sedate and had slept most of the morning in the geri-chair. At 10:00 a.m., nurses placed Thomas back into her hospital bed with the side rails up and instructed her not to get out of the bed without assistance. She slept until 12:00 p.m. Upon awakening, Thomas refused to eat lunch, but took her prescribed medication and again fell asleep. At 2:45 p.m., Thomas refused her medication. At 3:00 p.m., plaintiff arrived for a visit. Upon plaintiff's arrival, Thomas was discovered to have allegedly fallen to the floor in her room. There were no witnesses to the fall, and there was conflicting testimony over who discovered Thomas lying on the floor.

Plaintiff's claim for a right to relief sets forth an action sounding in medical negligence. Plaintiff alleges that defendant, acting by and through its employees and agents, deviated from the accepted standards of psychiatric nursing care in its monitoring of Thomas. Specifically, plaintiff alleges that defendant's nurses breached their duty of care owed to Thomas by failing to implement one-on-one, continuous, in-room supervision of Thomas, in accordance with a close-supervision order. Additionally, plaintiff alleges that defendant was negligent in its failure to place Thomas in some form of physical restraint. Plaintiff argues that these deviations from the established standards of psychiatric nursing care proximately caused Thomas to suffer a fall which resulted in the formation of a subdural hematoma.

 In order to prevail on a claim of medical malpractice or professional negligence, plaintiff must first prove that defendant's resident doctors or nurses committed medical malpractice. R.C. 2125.01. The requirements for a meritorious medical malpractice claim under Ohio law are set forth in *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673.

"In order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and

circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things.

"The standard of care for a physician or surgeon in the practice of a board-certified medical or surgical specialty should be that of a reasonable specialist practicing medicine or surgery in that same specialty in the light of present day scientific knowledge in that specialty field; therefore, geographical considerations or circumstances control neither the standard of the specialist's care nor the competence of the testimony of an expert in that specialty." *Id.* at paragraphs one and two of the syllabus.

"Where the alleged negligence involves the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard, and that the nurses' negligence, if any, was the proximate cause of the patient's injury." *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 103–104, 592 N.E.2d 828, 834. See, also, *Whiteleather v. Yosowitz* (1983), 10 Ohio App.3d 272, 275, 10 OBR 386, 390–391, 461 N.E.2d 1331, 1335–1336.

In the present case, plaintiff offered the expert testimony of Jeffrey Reichardt, R.N., B.S.N. In contrast to Reichardt's opinion, defendant offered the expert testimony of Paula Rabinowitz, R.N., B.S.N., M.S.N. Based upon the expert testimony, the court finds that defendant's psychological-care nurses did not deviate from the standard of care expected of psychological-care nurses. The court further finds that defendant's nurses exercised appropriate care by maintaining close supervision through periodic checks of Thomas's room and by virtue of the fact that Thomas's room was within eyesight of the nurses' station. Defendant's nurses used good judgment, made accurate assessments of Thomas's condition, and implemented reasonable, incremental safety measures that did not deviate from accepted standards of psychological nursing care. Accordingly, judgment shall be rendered in favor of defendant.

*Judgment for defendant.*

J. Warren Bettis, J., retired, of the Columbiana County Court of Common Pleas, sitting by assignment.