Plaintiff-appellant, Monte Miltenberger ("Miltenberger"), appeals a Butler County Court of Common Pleas decision granting summary judgment in favor of defendant-appellee, Exco Company ("Exco"). We reverse.
On October 12, 1994, Miltenberger, employed as a laborer for Exco, was working at an excavation site in West Chester, Butler County, Ohio. On that day, Miltenberger and another co-worker, Dennis Kingery, were constructing a plywood form in a shallow excavation site. At some point, Miltenberger's supervisor, Gary Riffle, left the excavation site to retrieve a trackhoe.[1]
The trackhoe had an arm connected to it called the Hendrix Quick Coupler. The Hendrix Quick Coupler allows the operator to disconnect and reattach equipment to it. While operating the trackhoe, Riffle attached an excavation bucket, weighing approximately two thousand pounds, to the coupler. Using the trackhoe, Riffle lifted the bucket and shook it back and forth to test the security of the attachment. Exco claims that this is known as the "common safety test." After Riffle performed the common safety test, he returned to the excavation site.
The parties disagree at to what happened next. Appellants[2]
claim that Riffle never told Miltenberger to leave the site, or that Riffle would be returning with a trackhoe. Exco claims that Riffle warned Miltenberger and Kingery to leave the site. As Riffle proceeded toward the excavation site, he realized that Miltenberger was still inside the excavation site. Riffle began to turn the trackhoe away from the site; however, the bucket detached and rolled into the site, pinning Miltenberger and crushing his fingers. As a result, Miltenberger suffered severe injuries, including the amputation of some of his fingers.
Thereafter, the Occupational Safety and Health Association ("OSHA") inspected the site and issued several citations to Exco. OSHA found that Exco (1) failed to properly train employees on the "Hendrix safety test"[3] for the Hendrix Quick Coupler; (2) failed to utilize Hendrix's safety test for the Hendrix Quick Coupler; (3) had employees operating the trackhoe while other employees were working in the excavation site below; and (4) failed to utilize retaining walls to protect employees working inside the excavation site from equipment or materials falling into the excavation site.
On October 9, 1996, appellants filed a complaint in the trial court. In their complaint, appellants named Exco; Hendrix Manufacturing Co., Inc. ("Hendrix"), manufacturer of the arm; and Komatsu America International Co. ("Komatsu"), manufacturer of the trackhoe, as defendants. The complaint alleged an intentional tort claim against Exco and product liability claims against Hendrix and Komatsu.
On December 20, 1996, Exco filed an answer denying appellants' intentional tort claim. On May 24, 1997, Exco filed a motion for summary judgment. On March 30, 1998, the trial court granted Exco's motion and dismissed appellants' intentional tort claim against Exco. Appellants filed a timely appeal[4] and assert the following seven assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN CONCLUDING THAT APPELLANTS FAILED TO REBUT EXCO'S ASSERTION THAT IT HAD NO KNOWLEDGE OF THE QUICK COUPLER'S MANUFACTURER'S REQUIRED SAFETY TEST PRIOR TO THE INCIDENT GIVING RISE [SIC] THIS ACTION.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN REFUSING TO CONSIDER EVIDENCE OF PRIOR INCIDENTS OF EXCAVATION BUCKETS FALLING OFF OF TRACKHOES.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED BY REFUSING TO CONSIDER EXCO'S KNOWLEDGE THAT EMPLOYEES WERE WORKING UNDERNEATH THE TRACKHOE, WHILE IT WAS BEING OPERATED.
Assignment of Error No. 4:
 THE LOWER COURT ERRED BY REFUSING TO CONSIDER THAT EXCO WAS CITED BY OSHA IN CONNECTION WITH APPELLANT MILTENBERGER'S INJURIES.
Assignment of Error No. 5:
 THE LOWER COURT ERRED BY REFUSING TO CONSIDER THE EXPERT OPINION OFFERED BY APPELLANTS.
Assignment of Error No. 6:
 THE LOWER COURT ERRED BY REFUSING TO TAKE INTO CONSIDERATION EVIDENCE OF EXCO'S HISTORY OF PRIOR OSHA VIOLATIONS.
Assignment of Error No. 7:
 THE TRIAL COURT ERRED BY REFUSING TO CONSIDER THAT EXCO ACTED TO REQUIRE MILTENBERGER TO CONTINUE TO WORK UNDER DANGEROUS CONDITIONS.
We will address appellants' assignments of error after a discussion of when summary judgment should be granted in an employee's intentional tort claim against an employer.
Civ.R. 56(C) permits the trial court to grant summary judgment where there is no genuine issue as to any material fact. Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346. Summary judgment will be granted as a matter of law if reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made. Id. A genuine issue of material fact exists when the relevant factual allegations in the pleadings, affidavits, depositions or interrogatories are in conflict. Fitzgerald v. Masland-Hayashiy, Inc. (Dec. 15, 1997), Warren App. No. CA97-05-042, unreported, at 6-7, citing Duke v. Sanymetal Prod. Co., Inc. (1972), 31 Ohio App.2d 78.
In deciding whether there is a genuine issue of material fact, the evidence must be construed in the nonmoving party's favor. Hannah v. Dayton Power Light Company (1998), 82 Ohio St.3d 482,485. Further, "the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions must be construed in a light most favorable to the party opposing the motion." Id., citing Turner v. Turner (1993), 67 Ohio St.3d 337, 341.
In reviewing the moving party's motion, a trial court should award a summary judgment with caution. Welco,67 Ohio St.3d at 346. Nevertheless, a summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essential elements of his claim. Id.
In determining whether the plaintiff demonstrated the elements of his claim, an appellate court must independently review the record to determine if summary judgment was appropriate. Therefore, an appellate court affords no deference to the trial court's decision when making its own decision. Fitzgerald at 7-8, citing Schwartz v. Bank One, Portsmouth, N.A. (1992), 84 Ohio App.3d 806.
In order to be granted summary judgment, the moving party must prove that there is no genuine issue of material fact to support the elements of an intentional tort claim. Therefore, a review of the elements of an intentional tort claim is essential.
 To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent.
Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, at paragraph two of the syllabus.
Intent requires the employee to prove that the employer (1) had the knowledge of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation; (2) had the knowledge that if its employee was subjected by his employment to such a dangerous process, procedure, instrumentality, or condition, then harm to the employee would be a substantial certainty; and (3) under such circumstances, and with such knowledge, acted to require the employee to continue to perform the dangerous task. Id. at paragraph one of the syllabus; Dirksing v. Blue Chip Architectural Products (1994), 100 Ohio App.3d 213.[5]
Proof of these three elements may be demonstrated by direct or circumstantial evidence. Hannah, 82 Ohio St. at 485, citing Adams v. Aluchem, Inc. (1992), 78 Ohio App.3d 261, 264. Bearing in mind the elements in proving an intentional tort and that the burden of proof is upon Exco to show that no genuine issue of material facts exists, we now turn to appellants' arguments.
In their first, second, and third assignments of error, appellants argue that the trial court erred when it granted Exco's summary judgment because the court failed to consider evidence that demonstrated that Exco had knowledge of the existence of a dangerous condition. We agree.
To support their claim that Exco knew about the existence of a dangerous condition, appellants set forth three arguments. First, appellants claim that Exco knew about the safety test in the Hendrix Quick Coupler installation manual. Appellants disagree with the trial court's ruling that "Plaintiff has come forward with no evidence to rebut Exco's assertion that it had no knowledge of this test prior to the accident." Appellants argue that since Exco did not deny knowledge of the Hendrix safety test, appellants were not required to rebut such assertion.
Exco counters this argument by introducing an answer to an interrogatory propounded by appellants. The interrogatory states as follows:
 4. At the time of purchase of the [Komatsu] excavator, the defendant [appellee] received a service manual * * *.
Exco's answer was as follows:
 No service or maintenance manual was received for the Hendrix quick coupler which had already been installed on the excavator when the excavator was purchased. The defendant received an installation manual on the quick coupler after the subject accident.
In construing the facts most favorable to the nonmoving party, it is unclear whether Exco received a manual which contained the Hendrix safety test prior to the accident. The record reflects that the Hendrix safety test was contained in Hendrix's installation manual. The record does not indicate, as Exco suggests, that the Hendrix safety test was in a service or a maintenance manual. Further, while Exco's answer to the interrogatory states that it received an installation manual after the accident, Exco does not deny being in possession of one before the accident. Therefore, we find that Exco did not specifically deny knowledge of the Hendrix safety test prior to the accident, and that reasonable minds could conclude that Exco had knowledge that the "common safety test" was not the appropriate safety test.[6]
Second, appellants claim that Exco had knowledge of the dangerous condition because there were prior incidents of excavation buckets falling. Appellants put forth an affidavit by Miltenberger, who stated that he had seen excavation buckets detach unexpectedly in the past.
Exco rebuts this claim with affidavits from two current employees who stated that they had never witnessed or heard of excavation buckets detaching unexpectedly. Further, Exco claims that appellants bear the burden of proof to establish with specificity where and when Miltenberger saw the excavation buckets detach. Exco cites to Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, claiming that the court imposed a duty upon the plaintiff to establish that the employer knew of the "exact dangers which ultimately caused the injury." However, Sanek is distinguishable because it addressed the plaintiff's burden of proof while at trial. While the nonmoving party has no initial burden to resist a motion for summary judgment, the nonmoving party has a burden of rebuttal to supply evidentiary materials which deny the moving party's claims. Wing v. Anchor Media (1991), 59 Ohio St.3d 108; Whiteleather v. Yosowitz (1983), 10 Ohio App.3d 272, 272. However, the above cases do not indicate that the same specificity required at trial is required of an affidavit in support or in opposition to a summary judgment motion. Evidence that rebuts the moving party's claim is sufficient. Wing,59 Ohio St.3d at 111.
Civ.R. 56(E) sets forth the requirements for affidavits as follows: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Miltenberger's affidavit states that he is competent makes the following statement based upon Miltenberger's personal observation: "I also witnessed the bucket falling off the trackhoe a few times when "Bull" [an Exco employee] was operating the trackhoe fifty yards ahead of the crew." (Emphasis added.)
Upon reviewing Miltenberger's affidavit, we find that it meets the requirements of Civ.R. 56(E) and is sufficient evidence to rebut Exco's claim in their summary judgment. Further, we find that all the affidavits presented state conflicting "relevant factual allegations," thereby presenting a genuine issue of material fact that the trier of fact should consider.
Third, appellants introduced Riffle's affidavit, which states that although Riffle warned Miltenberger to leave the site, Riffle did not make sure that Miltenberger was cleared of the site before Riffle began to operate the trackhoe near Miltenberger. It is undisputed that Riffle returned to the excavation site with the trackhoe and then noticed that Miltenberger was still in the site. Whether this fact supports appellants' claim that Exco had knowledge of a dangerous condition or not is a question that should be decided by the trier of fact, because reasonable minds could disagree as to whether such conduct constitutes knowledge on the part of Exco.
Based upon the foregoing, we find that it is unclear which manual contains the Hendrix safety test, and which manuals Exco had in its possession prior to the October 12, 1994 accident. In addition, we find that the affidavits supplied by both sides with regard to whether buckets detached in the past are conflicting. We therefore find that a genuine issue of material fact exists as to Exco's knowledge under the first prong of Fyffe. Appellants' first, second, and third assignments of error are well-taken and sustained.
In their fourth, fifth, and sixth assignments of error, appellants argue that there is sufficient evidence to establish that Exco knew with substantial certainty that the conditions Miltenberger was subjected to would cause him injury. Appellants argue that they presented three pieces of evidence which illustrate that Exco knew with substantial certainty that an injury would occur, to wit: (1) an expert opinion that stated that if mandatory OSHA regulations and the Hendrix safety test were not followed, then injury would occur with substantial certainty; (2) the October 12, 1994 OSHA citations to Exco; and (3) prior OSHA violations. Therefore, appellants claim that they have met their burden in establishing the second prong of Fyffe to overcome a summary judgment. We agree.
To support their arguments, appellants rely on this court's previous decision in Dirksing, 100 Ohio App.3d 213. In that case, the employee introduced (1) testimony that the proper safety mechanism was not applied; (2) undisputed prior OSHA violations; and (3) an expert opinion stating that the employer knew that the injury was to occur with substantial certainty. We held that this was sufficient circumstantial evidence to satisfy the second prong in Fyffe. Dirksing, 100 Ohio App.3d at 219-21.
Exco claims that appellants' reliance on Dirksing is misplaced because "Exco was never cited by OSHA for any violation involving the Komatsu trackhoe or the Hendrix Quick Coupler prior to the incident." In addition, Exco claims that in Dirksing, the expert's opinion was sufficient to preclude a summary judgment motion because the expert's testimony was based in part on prior OSHA violations. Therefore, Exco argues that since appellants' expert did not rely on prior OSHA records, appellants' expert's opinion is insufficient circumstantial evidence under Dirksing and should not be considered by the court. We disagree with this rationale.
In Dirksing, we stated that attacks on an expert's opinion are merely attacks on the expert's credibility; it does not necessarily follow that the expert's opinion will not and should not be considered in support or in opposition to summary judgment because the expert relied upon different information as the basis for his opinion. Dirksing, at 220. Therefore, we do not find that Dirksing, as Exco claims, would only consider an expert opinion in an employer intentional tort claim if the expert's opinion was based upon prior OSHA violations.
We further refuse to hold that an expert opinion is not appropriate evidence to consider when ruling upon a motion for summary judgment. Expert affidavits offered in support or in opposition of summary judgment must comply with Civ.R. 56(E) as well as with Evid.R. 702 through 705 in order for a court to consider them in a summary judgment motion. Lawson v. Song. (Sept. 23, 1997), Scioto App. No. 97 CA 2480, unreported, at 6. Civ.R. 56(E) requires affidavits to be based upon personal knowledge, set forth facts that would be admissible into evidence, and the affiant must be competent. Further, "the affidavit must set forth the expert's credentials and the facts or data he considered in rendering his opinion." Id. at 7, citing Evanoff v. Ohio Edison Co. (Nov. 10, 1994), Portage App. No. 93-P-0015, unreported.
The rules of evidence governing an expert opinion also set forth guidelines to determine whether the admission of an expert opinion is proper. The applicable evidence rules in this case are Evid.R. 702 and 703. Evid.R. 702 states that:
 A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information * * *[.]
Further, Evid.R. 703 allows an expert to base his opinion upon evidence that is admissible at a hearing.
In the present case, appellants' expert, Frank Burg, stated that he had twenty-five years of experience in the occupational health and safety field, and provided a long list of credentials qualifying him as an expert. Burg based his opinion on his experience and knowledge in the field of occupational health and safety, OSHA's October 12, 1994 citations to Exco, the Union Township Police Department's accident report, and Miltenberger's affidavit. Burg opined that based upon the above information, Exco failed to maintain the proper safety test and failed to properly train its employees to operate the trackhoe. As a result, Burg concluded that Exco knew with substantial certainty that an injury would occur. Upon reviewing Burg's affidavit, we find that the above information relied upon in the affidavit meets the requirements of Civ.R. 56(E) and Evid.R. 702 and 703.
The trial court disregarded appellants' expert opinion finding that the information relied upon by Burg was false and erroneous. After thoroughly reviewing the record, we do not find any evidence that the information relied upon by Burg was based upon false or erroneous facts. Further, with the exception of Miltenberger's affidavit, the information Burg relied upon has not been disputed or proven to be false or erroneous. We therefore hold that the trial court erred when it disregarded Burg's affidavit in opposition to the summary judgment motion.
In addition to Burg's affidavit, appellants introduced evidence that Exco's conduct on October 12, 1994 undisputedly violated OSHA standards by submitting the October 12, 1994 OSHA citations against Exco. Appellants argue that the purpose of OSHA regulations is to protect employees, and that Exco must follow OSHA safety standards whether Exco was aware of them or not. Therefore, appellants assert that if Exco disregards an imposed safety duty that is designed to protect its employees, then it follows that an injury will occur with substantial certainty. To substantiate their argument, appellants introduced the October 12, 1994 citations to show that Exco knowingly violated an OSHA safety regulation and that such breach of duty demonstrates that Exco knew that the injury would occur with substantial certainty.
Appellants also presented evidence that Exco violated OSHA regulations in the past. Appellants introduced a document provided by OSHA which identifies companies by name who received citations for violation of OSHA regulations. On that list are companies named "exco" and other companies that contain the letters "e", "x", "c", and "o". Exco challenges such evidence since the document does not unequivocally identify Exco. Rather, it identifies companies with the same letters as Exco. Thus, the document could refer to any company that contains the word "exco." However, the record shows that Exco failed to demonstrate that it was not cited in the past by OSHA. Further, the document does not unequivocably eliminate Exco as a prior offender. Thus, it is this court's opinion that Exco did not meet its burden of proving that no genuine issue of material fact existed.
Based upon all of the foregoing and construing the circumstantial evidence in appellants' favor, we conclude that reasonable minds could differ as to whether an injury was substantially certain to occur. Thus, we find that a genuine issue of material fact exists as to the second prong of the Fyffe test. Appellants' fourth, fifth, and sixth assignments of error are well-taken and are sustained.
In their seventh assignment of error, appellants assert that Exco, knowing of dangerous conditions, and knowing of the substantial certainty of harm, nevertheless required Miltenberger to work under dangerous work conditions. We agree.
To overcome a summary judgment under Fyffe's third prong, the opposing party can present evidence that raises an inference that the employer, through its actions and polices, direct or implied, required its employee to engage in a dangerous task. Hannah,82 Ohio St.3d at 487. Appellants argue that Exco subjected Miltenberger to dangerous conditions when Riffle proceeded to the excavation site without the excavation bucket correctly attached. In addition, appellants claim that Riffle's failure to tell Miltenberger to leave the site, and failure to clear the site before operating the trackhoe, subjected Miltenberger to a dangerous condition which ultimately resulted in his injuries.
Exco argues that since it did not know of a dangerous condition, it could not have subjected Miltenberger to it; therefore, appellants have not met their burden under the third prong of Fyffe. However, we have already established that reasonable minds could conclude that Exco knew of the dangerous condition; thus, Exco's argument is not valid. Exco did introduce Riffle's affidavit, which states that Miltenberger was instructed to leave the site. However, Miltenberger's affidavit establishes conflicting testimony as to whether he was told to leave the site, thereby demonstrating that reasonable minds could conclude that Miltenberger was subjected to a dangerous condition.
Accordingly, there is a genuine issue of material fact as to the third prong of the Fyffe test. Appellants' seventh assignment of error is well-taken and sustained.
Based upon the foregoing, we find that there is a genuine issue of material fact as to whether Exco had knowledge of a dangerous condition, whether Exco knew with substantial certainty that an injury would occur, and whether Exco acted to require Miltenberger to continue to work under such dangerous condition. Therefore, we find that the trial court erred when it granted summary judgment in Exco's favor.
Judgment reversed and remanded for further proceedings.
YOUNG, P.J., and WALSH, J., concur.
[1] The record is unclear as to the exact definition of a trackhoe; however, the context in which "trackhoe" is used, it appears to be a motorized piece of heavy equipment that requires its operator to sit inside of it to move it, similar to a tractor.
[2] Appellants are Miltenberger, his wife, and his son. Miltenberger's wife and son stated derivative claims for loss of consortium and loss of companionship.
[3] In their complaint against Exco, appellants claim that Hendrix outlined a safety test inside its installation manual, the "Hendrix safety test," which Exco knew about but failed to use. Appellants claim that the Hendrix safety test is the proper test that should have been used by Exco.
[4] The trial court's entry granting summary judgment to Exco contained "no just reason for delay" language pursuant to Civ.R. 54(B).
[5] The General Assembly attempted to overrule Fyffe with the enactment of R.C. Chapter 2745 on November 1, 1995. Since this case predates the passage of R.C. Chapter 2745, the newly enacted statute is inapplicable. Moreover, the constitutionality of the statute is currently under review by the Ohio Supreme Court.
[6] Appellants argue that even if Exco did not have the proper manual, C.F.R. 1926.21 requires an employer to "avail himself of the safety and health training programs * * * [and] instruct each employee in the recognition and avoidance of unsafe conditions." It is clear that C.F.R. 1926.21 places a duty upon Exco to maintain a safe and healthy work environment. It is appellants' assertion that the Code of Federal Regulations imputes knowledge upon Exco and a duty to maintain all appropriate manuals to ensure a safe work environment. As a result, appellants claim that Exco knew or should have known that the "common safety test" was inadequate and Exco breached its duty when it did not maintain all appropriate manuals. We do not deny that Exco had a duty under C.F.R. 1926.21 to maintain a safe work environment. However, since we hold that there are genuine issues of material fact as to Fyffe's first prong, we decline to address this issue.