**ESTATE OF BANFIELD et al., Appellants,**

v.

**TURNER et al., Appellees.**

[Cite as *Estate of Banfield v. Turner* (1999), 131 Ohio App.3d 213.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 96 CO 43.

Decided Feb. 19, 1999.

214

---

*Tony A. Vazquez,* for appellants.

*Aronson, Fineman & Davis* and *Bernard Fineman; Gallagher, Sharp, Fulton & Norman* and *Alan M. Petrov; Comstock, Springer & Wilson* and *Lawrence R. Springer,* for appellees.

---

VUKOVICH, Judge.

Plaintiff-appellant Darlene Banfield ("appellant"), as representative of the estate of her late husband, Dr. Harlow Banfield, appeals from the decision of the Columbiana Common Pleas Court granting summary judgment in favor of defendants-appellees, Dr. Kenneth Turner, accountant William Miller, and the accounting firm of Crable, Miller & Visnic, Inc. ("Crable"). For the reasons set forth below, the judgment of the trial court is reversed and the cause is remanded.

The within appeal arises out of the following facts: Since 1977, Banfield and Turner were equal shareholders in Anesthesiology Associates of East Liverpool, Ohio, Inc. ("AAELO"). Banfield retired from AAELO in October 1988 and died in February 1989, leaving appellant as his beneficiary.

At the end of 1989, Miller assisted in the liquidation and distribution of AAELO's assets. Corporate documents state that appellant attended a meeting

and voted to cancel the corporate charter and to liquidate the corporation. However, she claims that she never attended such meeting.

Besides AAELO, Turner also had an ownership interest in East Liverpool Anesthesiologist Group ("ELAG"). Appellant submitted to the court approximately fifteen AAELO checks issued to ELAG after Banfield's retirement and subsequent death. Because Turner was AAELO's principal operating officer after Banfield's retirement, the checks were signed only by Turner.

Appellant alleged that Turner's transfer of assets to ELAG was improper and asked for an accounting. Miller and Crable submitted a daily record of receipts that detailed the amounts that AAELO owed and paid to ELAG for services performed.

Hill, Barth & King audited AAELO and stated that the total of the checks paid to ELAG after Banfield's retirement was $44,021.84, with $33,466.37 accounted for as services rendered, leaving $10,555.47 in questionable payments. Appellant also relies on this audit for the proposition that $40,405.38 is still owed to plaintiffs from the liquidation of AAELO. The affidavit of David Snyder, an accountant with Packer, Thomas & Co., concurs with the conclusion of the Hill, Barth & King report.

A further point of contention in appellant's brief concerns AAELO's two pension plans. We will not address this issue for at least two reasons: (1) the complaint made no allegation regarding the pension plans, and (2) the claim with respect to the pension plans is barred by the doctrine of *res judicata* because it was previously decided against appellant in federal court in proceedings identified as *Banfield v. Turner* (May 12, 1994), N.D. Ohio No. 4:2CV2566, unreported, affirmed (Sep. 12, 1995), C.A.6 Nos. 94–3663 and 94–3864, unreported, 1995 WL 544085.

■ Appellant assigns three errors for appellate review. For clarity, we will address these assignments out of order. Appellant's second assignment of error alleges:

"The trial court abused its discretion in denying Plaintiffs' Motion for Discovery pursuant to Civ.R. 56(F)."

■ The trial court has broad discretion in regulating the discovery process. *State ex rel. Grandview Hosp. & Med. Ctr. v. Gorman* (1990), 51 Ohio St.3d 94, 96, 554 N.E.2d 1297, 1299–1300. See, also, Civ.R. 26, Staff Note, which proclaims that trial courts have inherent power to control discovery. Determinations during the course of discovery will not be reversed in the absence of an abuse of discretion that prejudicially affects substantial rights of the parties. *State ex rel.*

*Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 58, 63 O.O.2d 88, 90, 295 N.E.2d 659, 661.

Civ.R. 56(F) provides:

"Should it appear from the affidavits of a party opposing the motion for summary judgment that he cannot for sufficient reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

Appellant contends that newly retained counsel had insufficient time to thoroughly review the case. Appellant cites *Tucker v. Webb Corp.* (1983), 4 Ohio St.3d 121, 4 OBR 367, 447 N.E.2d 100, where the court ruled that it was an error for the trial court to grant summary judgment without granting plaintiff additional discovery time where there was a "dearth of evidence". *Id.* at 123, 4 OBR at 369, 447 N.E.2d at 102.

Appellant also cites *Whiteleather v. Yosowitz* (1983), 10 Ohio App.3d 272, 10 OBR 386, 461 N.E.2d 1331, which reversed the summary judgment and remanded with instructions to allow appellant's new counsel time to conduct further discovery. *Whiteleather* suggested that the trial court should exercise its discretion liberally and grant additional discovery time to a nonmovant who proposes a "reasonable interval" to search for rebuttal evidence. *Id.* at 276, 10 OBR at 391–392, 461 N.E.2d at 1336–1337. Appellant claims that the "Rule 56(F) motion requested a short period to conduct the necessary discovery and to properly respond to defendants' summary judgment motion. However, the court denied plaintiffs' motion."

Two portions of this statement are disputable. First, appellant's April 19, 1996 motion for a Civ.R. 56(F) extension did not propose a "reasonable interval" but instead demanded an indefinite extension of discovery. Second, the court did not deny appellant's motion. The court merely limited the extension of discovery to what it considered a reasonable time period. Accordingly, the trial court granted appellant's 56(F) motion when it permitted an additional three weeks to complete discovery.

The three-week extension expired without any discovery activity by appellant. On May 16, 1996, appellant filed a motion to allow additional discovery, the denial of which resulted in the following assignment of error:

"The trial court abused its discretion in denying Plaintiffs' Motion to Allow Additional Discovery."

Appellant's motion to allow additional discovery was filed simultaneously with its memorandum opposing summary judgment. Appellant's motion specifically stated:

"At this time *counsel does not seek additional time to prepare Memorandum in Opposition to Defendant's Motion for Summary Judgment.* Counsel does need adequate time to prepare for trial and to complete discovery." (Emphasis added.)

■ Since appellant's case never went to trial and appellant's motion for additional discovery did not pertain to the granting of summary judgment, the denial of appellant's request for additional discovery before trial is not a final appealable order. "[D]iscovery orders are interlocutory and, as such, are neither final nor appealable." *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 438, 639 N.E.2d 83, 96. Moreover, as the above-quoted passage from appellant's motion for additional discovery makes clear, appellant did not want the extended discovery period in order to supplement its memorandum in opposition to summary judgment. Accordingly, if the court had granted the discovery extension, it would have been irrelevant because the court ended the litigation by granting summary judgment. As a result, this assignment of error is without merit.

Appellant's first assignment of error provides:

"The trial court erred in granting Defendants' Motions for Summary Judgment."

■. An appellate court must review the granting of summary judgment *de novo*, utilizing the same standard that is applied by the trial court. *Allied Erecting & Dismantling, Inc. v. Uneco Realty Co.* (1996), 116 Ohio App.3d 410, 688 N.E.2d 526. The applicable standard has recently been clarified in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

■ In seeking summary judgment, the movant has the initial burden of proving that there exist no genuine issues of material fact concerning elements essential to the nonmovant's case. *Id.* at 292, 662 N.E.2d at 273. The movant must specifically address what evidentiary material demonstrates that the movant is entitled to judgment as a matter of law. *Id.* The relevant evidentiary materials are listed in Civ.R. 56(C) and include items such as pleadings, answers to interrogatories, depositions, and affidavits.

Summary judgment must be denied if the movant fails to satisfy its initial burden.

■ "However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth

specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.* at 293, 662 N.E.2d at 274.

Summary judgment shall not be granted unless it appears from the evidence that the only conclusion that reasonable minds could arrive at is adverse to the nonmovant. Civ.R. 56(C). If the factual allegations in these evidentiary materials are in conflict, then a genuine issue of material fact exists and summary judgment shall not be granted. See, *e.g.*, *Murray v. Murray* (1993), 89 Ohio App.3d 141, 145, 623 N.E.2d 1236, 1238–1239; *Aglinsky v. Cleveland Builders Supply Co.* (1990), 68 Ohio App.3d 810, 815, 589 N.E.2d 1365, 1368–1369.

The issue is whether reasonable minds can come to but one conclusion, that conclusion being adverse to appellant. Because of the conflicting financial information contained in affidavits attached to appellant's opposition to summary judgment, it appears as though reasonable minds could conclude that appellant is entitled to money in excess of that which appellees distributed. Courts must use a summary judgment short-cut with caution. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138, 140–141.

Under a *Dresher* analysis, we must determine whether appellees met their initial burden of identifying the portions of the record that show that no genuine issues of material fact exist. Appellees emphasized to the court depositions that were favorable to them. Miller submitted an affidavit that swore that he properly distributed AAELO's assets.

Nonetheless, relevant factual allegations are in conflict, and summary judgment should not have been granted. The affidavits submitted by appellant demonstrate that there exist genuine issues of material fact regarding the following questions: What accounts for the $10,555.47 discrepancy in what ELAG received from AAELO versus what AAELO's records state that it owed ELAG? Why was $475 worth of AAELO's furniture used by ELAG without compensation to AAELO? Were all of the dealings between AAELO and Turner's company, ELAG, legitimate? These are the types of questions that need to be answered upon remand.

Other questions that appellant desires to have answered are: Why did Turner pay no interest on a $10,000 loan that was outstanding since 1977? What accounts for the allegations in an actuary's affidavit that Turner's loans were undervalued by $3,875? However, these allegations are not contained in appellant's complaint. Because this case was on the trial court's docket for so long without any attempt to amend the complaint even though appellant was presumably aware of the possibility of these allegations, it is doubtful that the trial court will allow appellant to amend the complaint upon remand.

Crable and Miller cite *Bloom v. Dieckmann* (1983), 11 Ohio App.3d 202, 11 OBR 298, 464 N.E.2d 187, for the proposition that summary judgment was proper because this is a professional negligence case and the plaintiffs failed to present the required expert testimony about such negligence. However, *Bloom* was a legal malpractice case. Appellees unsuccessfully seek to extend the *Bloom* decision to all cases of professional negligence.

The Supreme Court has held that accountants are not traditionally considered professionals subject to malpractice claims as are doctors and lawyers. *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 180, 546 N.E.2d 206, 209–210. As a result, the four-year statute of limitations for general negligence claims is applicable to professional negligence of an accountant while the one-year malpractice statute of limitations is not. *Id.*

Furthermore, the Snyder affidavit and the Hill, Barth & King report that the Snyder affidavit relies upon can be construed as being expert testimony that elicits material questions that need to be answered, by way of an accounting, before a definitive opinion can be rendered on appellees' alleged breach of fiduciary duty due to professional negligence. As a result of summary judgment being granted, appellant was denied the right to an accounting.

■ Appellant states that the existence of a fiduciary relationship between parties is grounds for an action by one party to compel an accounting by the other party, citing 1 Ohio Jurisprudence 3d (1977), Accounts and Accounting, Section 40. In *Baccelieri v. Heath* (1953), 158 Ohio St. 481, 49 O.O. 409, 110 N.E.2d 130, the court adopted the idea that " '[i]f plaintiff has a cause of action of which the court has jurisdiction, and it is necessary to have an accounting to determine his rights, it will be done.' " *Id.* at 487, 49 O.O. at 412, 110 N.E.2d at 133. As we held above, there are serious monetary issues that need to be resolved upon remand. Without an accounting, appellant's rights with respect to the many fiscal questions will be indeterminable. Accordingly, an accounting is warranted.

For the preceding reasons, appellant's first assignment of error has merit and the judgment of the trial court is reversed and the cause is remanded.

*Judgment accordingly.*

GENE DONOFRIO, P.J., and COX, J., concur.