OPINION
{¶ 1} Nicole Genova ("Nicole"), Linda Genova, and John Genova (together "the Genovas") appeal the January 17, 2003 judgment entry of the Geauga County Court of Common Pleas granting summary judgment in favor of the Hillbrook Club, Inc. ("Hillbrook"). For the reasons stated below, we affirm the decision of the trial court in this matter.
 {¶ 2} On August 14, 1999, Nicole attended a family function at the Hillbrook. At some point, Nicole walked onto a bridge located on the grounds of the Hillbrook to have her picture taken. As Nicole attempted to walk off the bridge after the picture was taken, she slipped and fell to the ground.
 {¶ 3} On August 10, 2001, the Genovas filed a negligence claim against the Hillbrook claiming that Nicole was seriously and permanently injured as the result of a known, defective condition existing on the Hillbrook's property. On July 15, 2002, the Hillbrook moved for summary judgment. The trial court granted the Hillbrook's motion on January 17, 2003. The Genovas timely appealed and raise the following assignment of error:
 {¶ 4} "The trial court committed reversible error by granting summary judgment in favor of defendant-appellee where there existed genuine issues of material fact as to whether Nicole Genova's injuries were caused by defendant's failure to comply with Ohio's Basic Building Code and as to whether defendants negligently permitted moss and/or mold to grow upon a pedestrian bridge located on their property."
 {¶ 5} In their sole assignment of error, the Genovas argue that the Hillbrook failed to present evidence that would demonstrate a lack of a genuine issue of fact. The Genovas further claim that their proffer of expert testimony created a genuine issue of material fact. Finally, the Genovas assert that the bridge failed to meet applicable building codes and engineering standards. Thus, the Genovas claim that the Hillbrook was not entitled to summary judgment.
 {¶ 6} Summary judgment is appropriate when there is "no genuine issue as to any material fact [and] * * * reasonable minds can come to but one conclusion," which is adverse to the nonmoving party. Civ. R. 56(C). In reviewing a motion for summary judgment, the court must construe the evidence in favor of the nonmoving party. Id. Moreover, an appellate court conducts a de novo review of the trial court's decision to grant summary judgment. Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186.
 {¶ 7} "[A] party seeking summary judgment * * * bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107. To meet this burden, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party's claims are not supported by any evidence. Id. If the moving party meets the initial burden, the burden then shifts to the nonmoving party to set forth specific facts to demonstrate that there is a genuine issue of material fact. Id.
 {¶ 8} "To establish actionable negligence, one must show * * * the existence of a duty, a breach of that duty and injury resulting proximately therefrom." Mussivand v. Davod (1989), 45 Ohio St.3d 314,318. Negligence cannot be presumed by the mere happening of an accident.Parras v. Std. Oil Co. (1953), 160 Ohio St. 315, paragraph one of the syllabus.
 {¶ 9} While "[t]he existence of a duty in a negligence action is a question of law for the court to determine," Mussivand,45 Ohio St.3d at 318, "[w]hether a duty is breached and whether the breach proximately caused an injury are normally questions of fact, to be decided by the jury." Pacher v. Invisible Fence of Dayton, 154 Ohio App.3d 744,2003-Ohio-5333, at ¶ 41 (citations omitted). Thus, summary judgment typically is inappropriate in negligence actions where breach and proximate cause are the disputed issues. Whiteleather v. Yosowitz (1983),10 Ohio App.3d 272, 274 (citations omitted). Summary judgment, however, is appropriate when "the plaintiff is unable to identify the cause of the fall [because], then `a finding of negligence on the part of the defendant is precluded.'" Spatar v. Avon Oaks Ballroom, 11th Dist. No. 2001-T-0059, 2002-Ohio-2443, at ¶ 50 (citation omitted).
 {¶ 10} A business owner owes a business invitee a "duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger."Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203 (citation omitted). A business owner, however, is not "an insurer of the customer's safety." Id. Liability attaches only when the owner has superior knowledge of the particular danger which caused the injury. Mikula v.Tailors (1970), 24 Ohio St.2d 48, 56. Moreover, an owner only owes a duty of care where the owner has knowledge of the condition or, because the condition was in existence for such a time, the owner should have known of the danger. Fitch v. Lake Cty. Historical Soc., 11th Dist. No. 2001-L-135, 2002-Ohio-4223, at ¶ 34 (citations omitted).
 {¶ 11} In this case, both parties concede that Nicole was a business invitee of the Hillbrook. In its motion for summary judgment, the Hillbrook sufficiently identified portions of the record to demonstrate the lack of genuine issue of material fact regarding the cause of Nicole's fall, as well as the Hillbrook's lack of knowledge of the alleged dangerous condition of the bridge. Thus, to survive the Hillbroook's motion for summary judgment, the Genovas must have set forth specific facts that identify the cause of her fall and that indicate the Hillbrook had either actual or constructive knowledge of the purported dangerous condition of the bridge.
 {¶ 12} The Genovas submitted an expert report concluding that the bridge was not in compliance with various building codes, including the Ohio Basic Building Code, regarding the slope of the bridge.[1] A violation of a building code, however, is not conclusive proof of negligence. Chambers v. St. Mary's School, 82 Ohio St.3d 563, 568,1998-Ohio-184.
 {¶ 13} The expert report further concluded that the slippery condition of the bridge was due to substandard maintenance. The report, however, failed to support this conclusion with any facts. In fact, the expert examining the bridge did not view the condition of the bridge as it was at the time of the slip and fall. A party opposing a motion for summary judgment must submit supporting evidence based upon personal knowledge and setting forth admissible facts. Civ.R. 56(E). In this case, since the expert report merely made conclusory statements as to the cause of Nicole's fall, without stating any supporting facts, and since the expert did not have actual knowledge of the condition of the bridge at the time of the fall, the expert report is not sufficient to avoid summary judgment. See Tarescavage v. Meridian Condominium, Inc. (May 12, 1994), 8th Dist. No. 65446, 1994 Ohio App. LEXIS 2048, at *10; Stamper v.Middletown Hosp. Assn. (1989), 65 Ohio App.3d 65, 69; Spatar,
2002-Ohio-2443, at ¶ 48.
 {¶ 14} Nicole testified in her deposition that "it had been raining, but it wasn't very wet that I recall. I do recall looking at the bridge when we took a picture after I was already on it, and I touched my hands and they had like green, moldy moss on them, so I guess that was what Ihad slipped on." (Emphasis added.) Nicole further testified that the bridge was damp at the time of the incident. John Genova ("John"), Nicole's father, who was present at the time of Nicole's slip and fall, testified in his deposition that it had "poured" on the day in question. John further testified that he had no idea what Nicole slipped on. He stated that she could have slipped on the wet wood.
 {¶ 15} The testimony reveals that neither Nicole nor John could identify the cause of Nicole's fall. Instead, this testimony indicates that Nicole only could speculate that the fall was the result of either the wet bridge or the moss covering the bridge. "Speculation or conjecture on a plaintiff's part as to * * * what caused her fall is not sufficient, as a matter of law." Flor v. Forest City Ent., Inc. (Mar. 23, 1995), 8th Dist. No. 66904, 1995 Ohio App. LEXIS 1075, at * 5; see, also, Stamper, 65 Ohio App.3d at 68 (citations omitted) ("Where the plaintiff, either personally or by outside witnesses, cannot identify what caused the fall, a finding of negligence on the part of the defendant is precluded."); Hughart v. Greenfield Research, Inc. (Oct. 8, 1991), 4th Dist. No. 772, 1991 Ohio App. LEXIS 4814, at *8-*9 (summary judgment was appropriate when the plaintiff submitted an affidavit stating that the cause of her fall was either oil on the soles of her shoes or an accumulation of gravel on the premises). Since Nicole was unable to specifically identify the cause of her fall, the trial court did not err in granting the Hillbrook's motion for summary judgment.
 {¶ 16} Even if Nicole was able to identify the source of her fall, summary judgment would have been appropriate in this case. The Genovas failed to proffer any evidence that would indicate that the Hillbrook had actual knowledge of the purported condition of the bridge. Moreover, the Genovas presented no evidence that would demonstrate how long the purported condition existed to support an inference that the Hillbrook had constructive knowledge of this condition. Thus, the Genovas were unable to establish that the Hillbrook had the requisite knowledge of the purported condition of the bridge to impose a duty on the Hillbrook to either warn others of or correct the condition of the bridge. Summary judgment was, therefore, appropriately granted. See Fitch,
2002-Ohio-4223, at ¶¶ 46-49; Orndorff v. ALDI, Inc. (1996),115 Ohio App.3d 632, 637; Cooper v. Red Roof Inns, Inc. (Mar. 30, 2001), 10th Dist. No. 00AP-876, 2001 Ohio App. LEXIS 1506, at *11; Dickerson v.Food World (Dec. 17, 1998), 10th Dist. No. 98AP-287, 1998 Ohio App. LEXIS 6218, at *9-*10.
 {¶ 17} For the foregoing reasons, we hold that the Genovas' sole assignment of error is without merit. The decision of the Geauga County Court of Common Pleas is affirmed.
Christley, J., concurs in judgment only.
O'Neill, J., dissents with a Dissenting Opinion.
[1] The Genovas argue in their brief that their expert also concluded that the bridge was also in violation of the building codes regarding the lack of handrails. A review of the record, however, reveals that their expert opines that "[t]here are no handrails provided at either side of the ramp as suggested by current standards." (Emphasis added.) Even if the lack of handrails was a violation of the building code, the lack of handrails, alone, is not sufficient to support a negligence claim. SeeBach v. Gatsby Saloon, Inc. (June 1, 1995), 10th Dist. No. 94APE12-1781, 1995 Ohio App. LEXIS 2247, at *10-*13. The key issue is whether the presence of a handrail would have prevented the fall, an issue that must not be left to speculation. Renfroe v. Ashley (1958), 167 Ohio St. 472,475. Moreover, the lack of a handrail may fall under the open and obvious doctrine. See, e.g., Williams v. Henderson (Oct. 19, 2000), 8th Dist. No. 76366, 2000 Ohio App. LEXIS 4886; Primavera v. Guthery (June 24, 1996), 3rd Dist. No. 9-96-11, 1996 Ohio App. LEXIS 2830; Ault v.Provenza (May 15, 1996), 9th Dist. No. 95CA006210, 1996 Ohio App. LEXIS 1906.
In this case, there is no indication that the existence of the handrails would have prevented the fall. The expert does not claim that the existence of the handrails would have done so. The only evidence in the record was testimony from Nicole, wherein she stated:
"I don't really remember the fall that much. I think that I must have put my hands out to grab the railing, to turn around and grab it, because when it declined the railing finished at the end of the bridge so there was no more railing and I must have turned around to grab back where I was holding and I fell a little bit on my left-hand side with my hands on the ground." (Emphasis added.)
Considering that Nicole never suggests that the presence of a handrail would have prevented her fall, her testimony is "too meager and inconclusive" and would require a great deal of speculation to conclude that the presence of a railing would have done so. See Renfroe,167 Ohio St. at 475.