**MICHELIN TIRE CO v FARRELL et**

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 4, 1932

David Steiner, Youngstown, for plaintiff in error.

H. H. Hull, Youngstown, for defendants in error.

FARR, J.

The issue in this cause is this, whether or not a person electing to sign an instrument in writing under such circumstances, and without reading the same, may thereafter predicate a defense of no liability upon such contract by claiming that misrepresentations were made which induced the signing of the contract, and that such party was defrauded by being so induced to sign such obligation. The authorities are not in accord on this proposition. In fact, there is quite a divergence in the different jurisdictions. Especially is that true of the measure of proof required to set aside a written instrument of this character. While not of importance in this connection, it is believed that the quantum of proof required in Ohio is as a rule that of clear and convincing, but did Mrs. Farrell absolve herself from liability in the instant case by her failure to read the instrument and thereby know its contents and thereafter and by reason of such fact predicate a defense upon the ground of fraud.

A case of interest in this connection is **Muskovitz v The Sun Underwriters Agency of the Sun Insurance Company, 3 Oh Ap, 422.** The first proposition reads as follows:

"Ignorance of the contents of a contract signed will not relieve a party from its effect."

This was a case in the Court of Appeals of this county and the opinion is by Judge Pollock. It involves the validity of a policy of insurance, and on page 424, in the opinion of the court, it is said—it being a case where insurance had been secured and there were liens upon the property which had not been reported to the insurance company at the time the insurance was taken, and it is said:

"The plaintiff admits that these liens were on the property, but he seeks to avoid the enforcement of the conditions of the policy by showing that he was a foreigner, not understanding the English language, and that when he purchased these scales the agent of the company presented some contract to him to sign; that he did not understand or know anything about it except that he would have to pay so much a month on the property, but that he signed that paper. About the same thing occurred as to the mortgage, and because he did not know these provisions were in the policy he seeks to avoid the conditions of the policy.

It is a well known rule that ignorance of the contents of a contract signed will not relieve a party from its effect. The mere fact that the plaintiff, because he was a foreigner, did not understand the conditions of the paper he signed for the scale company, and did not know that he had encumbered the property by a chattel mortgage, can not affect in any way the rights of the insurance company."

The same principle is announced in an earlier case by the Supreme Court of Ohio, the case of **A. & W. F. DeCamp v Andrew Hamma, Exr. of Zacharias Hamma, 29 Oh St, 467.** Judge McIlvane spoke for the court at page 471 as follows:

"Indeed, a recent authority, Daniel on Negotiable Instruments, §850, doubts whether there can be a case where a person who possesses the ordinary faculties and knowledge, and signs a bill or note upon the assurance that it is an instrument of a different kind can be without such negligence as would bind him to a bona fide holder for value."

That case presents a somewhat different feature in this, that the instrument went to a bona fide holder for value, and of course a bona fide holder for value would not be charged with knowledge, but in the instant case the transaction is still between the original parties, the Michelin Tire Company, and the Farrells.

Of interest in this connection is Page on the Law of Contracts, at page 231, where it is said that: "Negligence as affecting fraud in the Execution. Party unable to read or prevented from reading." It is held that in such an event a person is not guilty of such negligence as would deprive that person from predicating a defense upon fraud, and a number of states are cited in connection with the text but it is noteworthy that Ohio is not in that list, and in §234, page 354, it is said:

"Contract held valid. In a number of cases, however, the courts have permitted the party who has been guilty of successful fraud to reap the reward of his iniquity, on the theory that the negligence of the innocent party and his willingness to trust the party who is guilty of the fraud should put

452

the innocent party outside the protection of the law in enforcing the contract in which he has thus induced his innocent and confiding adversary to enter."

There is cited as sustaining the foregoing quite a number of states, among them the state of Ohio. The case of **McAdams v Mc-Adams, 80 Oh St, 232**, the second proposition of the syllabi reads as follows:

"But when it also clearly appears in such case that such deed is in apparent accord with previous declarations of the grantor as to his intentions and his subsequent declarations as to what he had done, and that he could read and had ample opportunity before, at and after, signing the deed to read the same, the presumption of undue advantage by reason of confidential relations is rebutted, and the burden rests upon the grantor to show by clear and convincing proof that the deed is fraudulent."

The above, so it will be observed, is not precisely upon the proposition, and yet it indicates something in connection with the instant case. In the opinion of the court, which is by Davis, J., at page 241 it is observed as follows:

"We quote from the language of Mr. Justice Hunt in Upton, Assignee, v Tribilcock, 91 U. S., 45, 50: 'It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission; Jackson v Croy, 12 Johns., 427; Lies v Stub, 6 Watts, 48; Fraley v Bryant, 32 Me., 474; Coffing v Taylor, 16 Ill., 457; Stapylton v Scott, 13 Ves., 427; Alvaney v Kinnaird, 2 Mac & G., 7; Burgess v Richardson, 29 Beav., 490'."

Mrs. Farrell says, at pages 37 and 38 of the Record:
"Q. What did he say?
A. Well, he said that he wanted me to sign this paper so I wouldn't be a partner of Mr. Farrell, and I told him I didn't know I was. He said yes, you was. If you sign this paper, he says, you wouldn't be. So I signed the paper, took his word for it."

There is no showing in the record that this woman could not read and write and after having signed the paper without reading

it she now seeks to avoid liability upon the ground of fraud and misrepresentation. It comes squarely within the principle announced in the case first referred to in Mahoning County, involving the policy of insurance, where certain articles destroyed by fire had encumbrances upon them which were not reported to the insurance company, and although in that case it was a foreigner who could not read or write, yet he is held to a knowledge of the instrument which he signed. It also comes within the principle announced in other Ohio cases.

For the reasons given it follows that the judgment must be reversed as to Elizabeth Farrell because contrary to the evidence, and the cause is remanded.

ROBERTS and POLLOCK, JJ, concur.