CAMPCO DISTRIBUTORS, INC., APPELLEE, *v.* FRIES ET AL.; TRELL ET AL., APPELLANTS.

(No. 10348—Decided July 30, 1987.)

*Lawrence T. Burick,* for appellee.
*Dwight D. Brannon,* for appellants.

BROGAN, J.   On August 27, 1984, Campco Distributors, Inc. ("Campco") entered into a written lease agreement with W.D. Enterprises ("WDE") for property at 5899 North Main Street in Dayton, Ohio. WDE obligated itself to pay rent and other charges listed in the lease.

On February 11, 1986, WDE filed a Chapter 11 petition in the United States Bankruptcy Court. The automatic stay provision of the Bankruptcy Code precluded Campco from maintaining any collection action against WDE for delinquent rent payments under the lease.

However, on March 7, 1986, Campco filed a complaint in the Montgomery County Court of Common Pleas naming six persons who allegedly executed a guaranty at the time of the execution of the lease. Campco asserted that the guarantors were jointly and severally liable for the rental payment obligation, as a consequence of WDE's default.

On October 8, 1986, Campco moved for summary judgment against the defendants. Partial summary judgment was entered against defendants Thomas and Mary Fries and Timothy and Linda Dunlevy on December 6, 1986. The summary judgment proceedings against defendants Eugene and Roberta Trell were continued. On February 20, 1987, summary judgment was also granted against the Trells.

The present appeal stems from the trial court's February 20 ruling which granted judgment for Campco against

the Trells. The Trells assert one assignment of error on appeal, claiming the trial court erred in granting summary judgment for appellee Campco because there remained a genuine issue of material fact.

Civ. R. 56 provides in part that summary judgment shall be rendered where there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 8 O.O. 3d 73, 375 N.E. 2d 46. The moving party has the burden of demonstrating that the requirements of Civ. R. 56(C) are satisfied. *Id.* at 66, 8 O.O. 3d at 74, 375 N.E. 2d at 47. However, the nonmoving party has a burden of rebuttal to supply evidentiary materials supporting his position, when the moving party presents evidentiary materials which deny that claim. *Whiteleather* v. *Yosowitz* (1983), 10 Ohio App. 3d 272, 275, 10 OBR 386, 390, 461 N.E. 2d 1331, 1335.

In reviewing a summary judgment, an appellate court must view the evidence and inferences drawn from underlying facts in a light most favorable to the party opposing a summary judgment motion. *Engel* v. *Corrigan* (1983), 12 Ohio App. 3d 34, 12 OBR 121, 465 N.E. 2d 932; *Viock* v. *Stowe-Woodward Co.* (1983), 13 Ohio App. 3d 7, 13 OBR 8, 467 N.E. 2d 1378.

The guaranty involved in the present action provided that the guarantors jointly and severally, and absolutely and unconditionally, guaranteed the prompt payment of all rental fees. Furthermore, they agreed to faithfully perform all other agreements and obligations provided for in the lease. The "absolute guarantee" language created an unconditional undertaking on the part of the guarantors that they would perform the obligation immediately upon the principal debtor's default. The creditor need not pursue and exhaust the principal before proceeding against the guarantor. *Ohio Savings Assn.* v. *Cortell* (1985), 24 Ohio App. 3d 234, 24 OBR 444, 495 N.E. 2d 33; *Eden Realty Co.* v. *Weather-Seal, Inc.* (1957), 102 Ohio App. 219, 2 O.O. 2d 238, 142 N.E. 2d 541; *Galloway* v. *Barnesville Loan, Inc.* (1943), 74 Ohio App. 23, 29 O.O. 214, 57 N.E. 2d 337.

Appellants contend, however, that material facts remain on the question of whether the guaranty is void. They put forth several arguments in support of their assertion. We will consider each separately, in light of the evidence before the trial court.

"I. The guaranty is void because Campco knew that Thomas Fries, president of WDE and co-guarantor, fraudulently procured appellants' signatures on the guaranty agreement."

Appellants explain that Fries was involved in an elaborate scheme of organizing legal entities to defraud investors. Fries established several corporations, including WDE and TF Enterprises. Fries induced appellants to become thirty-percent shareholders in WDE. Appellants claim when Fries had them sign the guaranty, he misrepresented that it was only the Campco-WDE lease agreement and that their signatures did not financially obligate them. Appellants argue that Campco had knowledge of Fries' activities and that he was acting as Campco's agent in obtaining their signatures.

Generally, "[w]hile the guarantor may successfully defend the creditor's action by showing that his execution of the contract of guaranty was procured by imposition which was practiced by the creditor [Campco], he cannot defeat a recovery by proof that he executed the instrument as a result of misconduct on the part of the principal

debtor [WDE]." (Footnotes omitted.) 38 American Jurisprudence 2d (1968) 1061, Guaranty, Section 58. The creditor must have participated in or had knowledge of the fraud or misrepresentations for his recovery to be defeated. *Kingsland Hook & Co. v. Pryor* (1877), 33 Ohio St. 19; *Bigelow v. Comegys* (1855), 5 Ohio St. 256; 52 Ohio Jurisprudence 3d (1984) 578, Guaranty and Suretyship, Section 131.

In support of summary judgment, Campco filed the affidavit of Thomas Davis, president of the company. Davis stated that Campco did not commit fraud or make any representations to induce the guarantors to execute the guaranty. He also denied that Campco had any knowledge of any wrongful conduct on the part of WDE. A copy of the lease agreement and the guaranty were incorporated by reference into the affidavit. The lease agreement clearly provided that Campco was the lessor and WDE was the lessee. Campco required the execution of a guaranty as a prerequisite to leasing the premises to WDE.

In response to Campco's motion, appellants filed a memorandum in opposition with supporting affidavits by Eugene and Roberta Trell. The affidavits essentially stated that they were "duped" into signing the guaranty by Thomas Fries. However, the affidavits did not set forth any specific facts which supported their claim regarding Campco's participation in or knowledge of any fraudulent practices by Fries or WDE. Although appellants' *memorandum* contains broad allegations of Campco's knowledge, they fail to support their claim with any competent and probative evidentiary materials. Such facts must be in the form of sworn affidavits, deposition testimony, interrogatory responses, admission responses, stipulations or other admissible, competent and probative evidence. Civ. R. 56(C).

Merely presenting unsupported allegations in a memorandum opposing the motion for summary judgment or relying on denials set forth in pleadings will not be sufficient to create a genuine issue of material fact to defeat such a motion. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66, 8 O.O. 3d 73, 74, 375 N.E. 2d 46, 47; *State, ex rel. Garfield Hts.*, v. *Nadratowski* (1976), 46 Ohio St. 2d 441, 75 O.O. 2d 497, 349 N.E. 2d 298; *Savransky* v. *Cleveland* (1983), 4 Ohio St. 3d 118, 4 OBR 364, 447 N.E. 2d 98; *Reynoldsburg Motor Sales, Inc.* v. *Columbus* (1972), 32 Ohio App. 2d 271, 61 O.O. 2d 310, 289 N.E. 2d 909; *cf. Rodger* v. *McDonald's Restaurants of Ohio, Inc.* (1982), 8 Ohio App. 3d 256, 8 OBR 347, 456 N.E. 2d 1262.

Furthermore, there is nothing in the affidavits which substantiates the claim that Fries had the authority to act or was acting on behalf of Campco when he procured the appellants' signature. In fact, the documents before the trial court suggest that Fries was acting solely for the benefit of WDE because without the guaranty, WDE could not have arranged to lease the premises and Campco presumably would have found another lessee.

The trial court properly disregarded appellants' arguments in light of the fact that the allegations were not supported in the manner required by Civ. R. 56(E) to overcome the motion.

"II. The guaranty is void because appellants were not aware at the time of signing the agreement that the document was a guaranty."

Appellants claim that by virtue of Fries' misrepresentations, they mistakenly signed the guaranty thinking it was only a formality which imposed no liability. They state they had no idea that the document was a personal guaranty of the entire lease agreement. They argue because there was fraud in the *execution* of the agree-

ment, the transaction is wholly void and ineffective.

Generally, the rules as to mistake and relief against mistake which apply to contracts apply to guaranty agreements. See 38 American Jurisprudence 2d (1968), Guaranty, Section 56. A unilateral mistake by the guarantor as to the nature of the underlying transaction or by the creditor as to the capacity in which the guarantor signed may not be the basis for relief from the guaranty contract. The guarantor must necessarily be required to read the guaranty, to inquire as to facts which would be apparent to a reasonable person, and to understand the legal significance of the document which he is signing. Any mistake which could have been remedied by due diligence and which is not a result of imposition practiced on the guarantor by the creditor, or one acting under the creditor's authority, is not a basis for rescinding the guaranty contract if the creditor reasonably relied on the promise of the guarantor. *Id.*; see, also, *Independent Directory Corp.* v. *Vandenbrock* (Ohio App. 1950), 94 N.E. 2d 228; *Thompson* v. *Shock* (Montgomery Cty. Sup. Ct. 1866) Dayton 403; 69 Ohio Jurisprudence 3d (1986), Mistake, Section 6.

In *Michelin Tire Co.* v. *Farrell* (App. 1932), 12 Ohio Law Abs. 450, the court stated that persons electing to sign an instrument without reading it may not thereafter predicate a defense of no liability upon such contract by claiming that misrepresentations were made which induced the signing of the contract and that they were defrauded by being so induced to sign the obligation. In *Michelin Tire,* the signers of a written guaranty were held liable where there was no showing they could not read or write and their only defense was that they relied on a representation of one who told them

the paper was a release from partnership liability.

A succinct statement of the law is set forth in *McAdams* v. *McAdams* (1909), 80 Ohio St. 232, 241, 88 N.E. 542, 544, where Judge Davis, quoting from *Upton* v. *Tribilcock* (1875), 91 U.S. 45, 50, stated:

" 'It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission.' "

Similarly, in *Independent Directory, supra,* plaintiff sued defendant for breach of contract. The defendant defended in part on the basis that he had not read the contract and was unaware what he was signing. This court determined that had the defendant read the contract which he signed, he would have found it clear and unambiguous. In the absence of fraud or mutual mistake, defendant could not rely on his own negligence to avoid the obligation. We noted at 230:

"* * * It is somewhat unusual that a court at this late day should have to repeat, that one who signs a contract without first making a reasonable effort to learn what is in it may not in the absence of fraud, or mutual mistake, avoid the effect of such contract. *Baltimore & O. R. Co.* v. *Bing, et al.,* 89 Ohio St. 92, 105 N.E. 142."

Appellants claim their mistake was induced by the fraudulent representations of Thomas Fries. When they signed the guaranty, they were presented only with page 32 of the document. Fries allegedly told them that he did not have the remaining pages with him and their signatures

were needed before the attorneys could finish drafting the lease.

Generally, where there is fraud in the execution of an agreement, such as a misrepresentation of the nature of the instrument signed, the transaction is wholly void. *Flynn* v. *Sharon Steel Corp.* (1943), 142 Ohio St. 145, 26 O.O. 343, 50 N.E. 2d 319; *Dice* v. *Akron, Canton & Youngstown RR. Co.* (1951), 155 Ohio St. 185, 44 O.O. 162, 98 N.E. 2d 301. However, in the case of a guaranty agreement, there must be evidence that demonstrates the creditor committed the fraud or knew or had reason to know of the guarantor's unilateral mistake. See *Thompson, supra*; 69 Ohio Jurisprudence 3d (1986), Mistake, Section 6.

As set forth more fully under argument I above, there was no evidence before the trial court which would have justified the conclusion that Campco had misrepresented the nature of the guaranty agreement or knew or should have known that Fries had fraudulently induced appellants to sign.

Furthermore, even assuming this court accepts appellants' claim about Fries' representations, a review of page 32 of the document belies their argument. Immediately above the signature lines on the page they signed is the word "guarantors." In addition, the last eight lines of the guaranty agreement appear on the page and contain the word "guarantors" twice. The "whereof clause" specifically states that "this guaranty is executed * * *." If appellants had read even the last page, the plain and simple language would have alerted them to the fact they were signing a guaranty. Ordinary diligence would have caused a reasonable person to inquire further about the document from Fries, a Campco representative or legal counsel.

Moreover, in their answer, the appellants admit signing the agreement and merely allege that they were induced to do so in reliance upon the misrepresentations of the other defendants as to the financial condition of WDE.

We cannot find, from a review of the evidence in a light most favorable to appellants, that the trial court erred in granting summary judgment for Campco. Accordingly, appellants' assignment of error is not well-taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF and FAIN, JJ., concur.