O P I N I O N
Plaintiff-appellant, Jane Golden, appeals a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendant-appellee, James W. Kearse, Jr. ("Kearse"), dba JS Trucking.
Kearse is the owner of JS Trucking, which leases tractors exclusively to Watkins Motor Lines ("Watkins"), a freight carrier. The role of JS Trucking is to provide tractors to Watkins, together with a list of qualified drivers. When Watkins needs a driver, it contacts JS Trucking who, in turn, contacts a driver to see if she or he wants to drive. In March 1994, JS Trucking hired appellant to drive its tractors to transport freight. On August 9, 1994, while pulling two Watkins trailers between Texas and Arkansas, appellant sustained injuries to her back and wrists when one of the trailers was struck on the side by a pick-up truck traveling at a high speed.
Appellant filed a claim with the Ohio Bureau of Workers' Compensation (the "Bureau"), which awarded benefits by order dated November 10, 1994. JS Trucking contested the order allowing appellant's claim. By order dated February 9, 1995, the district hearing officer affirmed the Bureau's decision. JS Trucking appealed to the staff hearing officer who, on April 5, 1995, disallowed appellant's claim on the ground that she was an independent contractor. Appellant appealed to the Ohio Industrial Commission (the "Commission") which refused to hear the appeal. On October 10, 1997, appellant appealed the Commission's order to the common pleas court. On April 1, 1998, JS Trucking filed a motion for summary judgment. By opinion and order of judgment filed July 14, 1998, the trial court granted JS Trucking's motion for summary judgment, finding that appellant was an independent contractor. This appeal follows.
In her sole assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of JS Trucking. Appellant contends that a genuine issue of material fact exists as to whether she was an independent contractor or an employee of JS Trucking at the time of the accident.
We note at the outset that, unlike other administrative appeals, appeals of actions of the industrial commission or the bureau of workers' compensation are not governed by R.C. Chapters 119 or 2505 but by R.C. Chapter 4123. See R.C. 119.01(A). Decisions of the industrial commission concerning the right of an employee to participate in the state's workers' compensation fund may be appealed to a court of common pleas under R.C. 4123.512. Such appeals are governed by the Ohio Rules of Civil Procedure. See R.C. 4123.512(E). Thus, upon the filing of a notice of appeal, the action proceeds like any other civil action. As such, these appeals are subject to de novo review by the court of common pleas. Zuljevic v. Midland-Ross (1980), 62 Ohio St.2d 116, 118. "If the trial court enters summary judgment in this situation, an appellate court employs a de novo standard of review." Pascarellav. Abx Air, Inc. (Aug. 10, 1998), Clinton App. No. CA98-01-002, unreported, at 5.
In applying the de novo standard, we review the trial court's decision independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. We also follow the standards set forth in Civ.R. 56(C). Summary judgment is appropriate when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C). A genuine issue of material fact exists when the relevant factual allegations in the pleadings, affidavits, depositions, or interrogatories are in conflict. Duke v. Sanymetal Prod. Co.,Inc. (1972), 31 Ohio App.2d 78, 81.
"Generally, where the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor [for purposes of determining eligibility for workers' compensation benefits] is a matter of law to be decided by the court." Bostic v. Connor (1988), 37 Ohio St.3d 144,146. "However, the issue becomes a jury question where the claimant offers some evidence that he was an employee rather than an independent contractor." Id. at 146-147. It is the duty of the trial court to submit the issue to the jury when there is sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue. Id. at 147.
The question of whether a person is an employee or an independent contractor turns upon the key factual determination of who had the right to control the manner or means of the person's work. Id.
at 146. If the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant. On the other hand, if the manner or means of doing the work is left to one who is responsible to the employer only for the result, an independent contractor relationship is created. Id.
_____Factors to consider in determining the amount of control exercised over the alleged employee include who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes travelled; the length of employment; the type of business; the method of payment, whether by job or by time; and any pertinent agreements or contracts. Id. "[E]ach factor is to be weighed with the key factor being who controls the manner or means of doing the work." Ogier v. Stewart Brothers, Inc. (10th Dist. Aug. 5, 1997), Nos. 96APE12-1732 and 96APE12-1733, 1997 Ohio App. LEXIS 3537, at *12.
Upon thoroughly reviewing the record, we find that appellant was not an employee of JS Trucking but rather an independent contractor. Attached to JS Trucking's motion for summary judgment were the affidavit of Kearse, JS Trucking's owner, and a written agreement appellant entered into with JS Trucking. Kearse's affidavit provides in relevant part:
2. [M]y company's sole service is providing drivers and tractors to Watkins Motor Lines.
* * *
4. Jane Golden * * * signed a contract on April 15, 1994 with JS Trucking agreeing that she was a self-employed truck driver, responsible for paying all of her own taxes, and responsible for providing her own insurance, including workers' compensation.
* * *
6. The driver has the option of whether or not to take the job and can decline the job if she wants without providing a reason as to why. If the driver decides she wants the job, she has six (6) hours to get Watkins [sic] to pick up the freight and trailer. The driver can get there earlier, if she wants to, at her option.
* * *
 7. JS Trucking does not set the requirements for the drivers (such as age, experience, etc.). The drivers' requirements are set by * * * Watkins * * *.
 8. JS Trucking does not set up times for the driver to pick up the freight and trailers to be picked up.
 9. JS Trucking does not tell the drivers how to load the freight or move the trailers.
 10. JS Trucking does not tell the driver where to take the freight and trailer.
 11. JS Trucking does not tell the driver what route to take to deliver the freight and trailer.
 12. JS Trucking does not tell the driver by when the freight needs to be delivered.
 13. In short, JS Trucking has no control whatsoever over the details and quality of the drivers' job.
 14. JS Trucking does not tell the driver when to return to JS Trucking with the tractor. The driver has the option once the initial load is delivered to the destination point (deter mined by Watkins Motor Lines) of either coming home to Cincinnati or taking another load some where else. The driver makes this decision without asking or even contacting anyone at JS Trucking.
 15. The length of employment for each driver is by the job and the drivers' [sic] are paid by the job * * *.
 16. JS Trucking does not withhold any federal, state or local taxes, from the drivers' check. In addition, JS Trucking reports the driver's compensation/payment to the IRS as the driver being self-employed * * *.
* * *
19. JS Trucking's only contact with the driver is that it asks the driver if she wants the job offered by Watkins Motor Lines. If she takes the job (at her option), JS Trucking provides the supplies necessary to complete the job, such as the tractor, gas, and, if necessary, overnight expenses. JS Trucking in no way controls how the driver completes the job or even if she will take additional delivery jobs.
20. The drivers who work for JS Trucking can, and frequently do, work as self-employed contractors for many different trucking companies at the same time.
The written agreement between appellant and JS Trucking provides in its entirety that:
 I, Jane Golden, am a self-employed truck driver. I am contracted for 13 cents per mile to JS Trucking.
 I understand that I am responsible for paying my own (federal, state, and local, taxes.) [sic]
 I also understand I will be responsible for providing myself with all or any life, health, or accidental (including workers' compensation) insurance that I might wish to carry on myself.
In an affidavit attached to her response to JS Trucking's motion for summary judgment, appellant downplayed the significance of the foregoing agreement by stating that in the context of her conversation with Kearse regarding this document and other paper work she signed, "it was [her] understanding that the statement [she] was signing was simply for IRS purposes." However, in her deposition, appellant stated that as a self-employed person, she paid her own taxes, that JS Trucking "did not take [the taxes] out," and that she knew that when she signed up with JS Trucking. We find these two statements to be contradictory, if not conflicting.
In Capital Financial Serv., Inc. v. Hibbard (Oct. 9, 1995), Butler App. No. CA95-04-079, unreported, we held that "a party can not defeat a motion for summary judgment by creating an issue of material fact in his affidavit which contradicts and is inconsistent with his own prior testimony." Id. at 12. In Capital, we acknowledged the Ohio Supreme Court's holding in Turner v. Turner
(1993), 67 Ohio St.3d 337, that when a party's affidavit in support of a motion for summary judgment contradicts that party's previous deposition testimony, summary judgment in favor of that party is inappropriate because an issue of credibility exists which can only be resolved by the trier of fact. Capital at 11, citing Turner at 341-342. We, however, agreed with the Eleventh District Court of Appeals which stated, when facing a situation similar to this case:
 However, [the Turner] holding is distinguishable from the instant case. In Turner, the movant filed an affidavit which contradicted the movant's earlier testimony. Thus, the court determined it was inappropriate to grant summary judgment in favor of the movant, when by his own acts, an issue of fact was created. In the instant case, appellant filed a contradictory affidavit in response to appellee's motion for summary judgment. It would be equally inappropriate to allow an opposing party to defeat a motion for summary judgment by creating an issue of fact through a contradictory affidavit Thus, the Turner holding is distinguishable from the instant case, and we hold that appellant may not create an issue of fact by filing an affidavit which contradicts his previous testimony in response to a motion for summary judgment.
Capital, Butler App. No. CA95-04-079, unreported, at 11-12, quoting McCain v. Cormell (11th Dist. June 30, 1994), No. 93-T-4967, 1994 Ohio App. LEXIS 2928, at *6-7.
We still find this rationale persuasive. Applying the reasoning ofTurner, "if a moving party's [use of conflicting summary judgment materials under Civ.R. 56] creates a question of credibility that prevents it from prevailing on a motion for summary judgment, then it follows that a non-moving party may not rely on such device to create a question of fact in order to defeat an otherwise valid motion for summary judgment." Push v. A-Best Products Co. (4th Dist. Apr. 18, 1996), No. 94 CA 2306, 1996 Ohio App. LEXIS 1625, at *9. In essence, neither a movant nor a respondent can prevail on summary judgment by creating an issue of material fact through the use of contradictory or conflicting summary judgment materials under Civ.R. 56.
With regard to the agreement, appellant also stated in her deposition that she did not read it before she signed it. However, "one who signs a contract without first making a reasonable effort to learn what is in it may not in the absence of fraud, or mutual mistake, avoid the effect of such contract."Campco Distributors, Inc. v. Fries (1987), 42 Ohio App.3d 200,203. "It will not do for a man to enter into a contract, and when called upon to respond to its obligations, to say that he did not read it when he signed it * * *. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omissions." Id.
As evidence of her employee status with JS Trucking, appellant stated in her affidavit that she received health insurance benefits while employed by JS Trucking, that she made no monetary contribution, either up front or as a deduction from the money received per mile, toward payment of any insurance premiums, that it was her understanding that Watkins provided the group insurance and Kearse paid the premium, and that the premiums paid were not charged to her as income, or reported as income on her 1099 tax statements. Appellant argues that because JS Trucking denies such payments were made, there is a genuine issue of material fact as to whether she was an employee of JS Trucking.
Contrary to appellant's argument, JS Trucking does not deny that payments were made. Kearse's affidavit solely states that appellant, like all the drivers provided to Watkins by JS Trucking, signed a contract agreeing she was a self-employed truck driver, responsible for providing her own insurance. We find that the alleged conflict, if any, between the two affidavits is not substantial enough to create a genuine issue of fact as to whether appellant is an employee of JS Trucking.
As evidence of her employee status, appellant also stated in her affidavit that: [She] had previously been employed by another trucking company which worked with Watkins. It was [her] understanding through that company that Watkins required the company to carry workers' compensation coverage for all drivers. Further, it is [her] understanding that the attached Operating Contract between [Kearse] and Watkins was in effect at the time of [her] injury. This Contract required [Kearse] to maintain workers' compensation coverage.
We note at the outset that appellant's understanding througha company other than JS Trucking that Watkins required that company to carry workers' compensation coverage for drivers is at best, if even admissible, very remote evidence of appellant's employee status with JS Trucking. Such evidence does not create a genuine issue of material fact as to whether appellant is an employee of JS Trucking.
Appellant, however, correctly states that an Operating Contract between JS Trucking and Watkins required JS Trucking to maintain proper workers' compensation coverage for JS Trucking's qualified drivers who, according to the contract, were deemed to be employees of JS Trucking. The contract also provided in pertinent part that:
 [JS Trucking] has and shall retain all responsibility for hiring and employing, at [its] expense, all necessary drivers * * * and shall (within the limitations imposed by law) set and pay their wages, and prescribe their hours and working conditions, including, the adjustment of grievances, supervising training, disciplining and discharge of all such drivers * * *. Such drivers * * * are and shall remain the employees of [JS Trucking].
After reviewing the contract in its entirety, we find that it solely governs the relationship between Watkins and JS Trucking and is thus inapplicable to the relationship between JS Trucking and appellant. Paragraph five of the contract provides in relevant part that "[t]he parties intend to create by this agreement an independent contractor relationship between [Watkins] and [JS Trucking], and neither [JS Trucking] nor its employees or agents are to be considered the employees or agents of [Watkins] at any time, under any circumstances or for any purposes." The foregoing provision, in our opinion, clearly shows that this contract was entered into not to define the relationship between JS Trucking and its drivers but rather to specifically ensure that Watkins was not and would never be considered the employer of the drivers working for JS Trucking, especially with regard to workers' compensation coverage. We find that cases from the Supreme Court of Ohio, such as State ex rel. Stanadyne,Inc. v. Indus. Comm. (1984), 12 Ohio St.3d 199, support our position.
In Stanadyne, Stanadyne, Inc. entered into an agreement with Shippers Interstate Services, Inc. which required Shippers to provide qualified drivers to Stanadyne, pay the drivers, and carry workers' compensation insurance. In return, Stanadyne was to pay Shippers for the drivers' services and was at liberty to direct the drivers to various destinations and select their routes. A driver hired by Shippers was fatally injured while on an assignment for Stanadyne. No claim for workers' compensation was filed, but a claim for death benefits was filed by the administrator of the decedent's estate with the industrial commission. When the claim was eventually granted, Stanadyne appealed, arguing that the decedent was employed by Shippers, not by Stanadyne.
The Supreme Court of Ohio held that although Shippers hired the truck drivers, paid their wages and withheld applicable taxes, reserved the right to fire any driver, and was responsible for labor negotiations with the drivers' unions, the right to control the manner or means of performing the work rested with Stanadyne.Id. at 202. Specifically, Stanadyne controlled the drivers' routes, destinations, the type of the truck driven, and the goods to be transported. Id. The court then stated that "Shippers Interstate can best be described as an employment agency which supplied qualified drivers to Stanadyne. This court's prior position under similar cases has been that the customer of the employment agency, exercising day-to-day control over the employee, will be considered to be the employer for purposes of workers' compensation." Id.
_____Evidence submitted by both parties showed that while JS Trucking provided the tractors to the drivers, hired the drivers and paid their wages, and paid for the fuel and maintenance, and overnight expenses if necessary, Watkins not only provided the trailers but also provided and controlled the drivers' routes and destinations, the allotted time and specific date to reach the destinations, and the loads to be transported. In her deposition, appellant stated that while on the road, drivers were in contact with Watkins, not with JS Trucking. In her affidavit, appellant stated that if they did not make the destination within three hours of the scheduled time, they were required to call Watkins.
Kearse stated in his affidavit that drivers working for JS Trucking could also work for other trucking companies. Appellant stated in her deposition that she could not work for other companies because there was no time. Kearse also stated that drivers had the option of declining to take a job. In her affidavit, appellant stated that she was afraid that if she refused a route, she would not be permitted to drive for JS Trucking in the future. However, in her deposition, appellant testified that she refused a route a few times without any consequence other than losing the opportunity to do that route. Appellant testified that the route was then reassigned to another truck driver and that she would leave for a different route six to eight hours later.
Finally, evidence submitted by appellant showed that Watkins required her to take a physical examination and a drug screen and to attend an orientation class[1] before she could work for JS Trucking pulling Watkins trailers. Evidence also showed that although JS Trucking provided the tractors, Watkins' name was on both doors of the tractor.
After reviewing the record, and applying the test and factors set forth in Bostic to the facts at bar, we find that although JS Trucking provided the tractors, hired the truck drivers, paid their wages, and paid for the fuel and maintenance of the tractors and any necessary overnight expenses, the right to control the manner or means of performing the work rested with Watkins and not with JS Trucking. As already noted, the drivers' routes, destinations, the allotted time and the specific date to reach the destination, and the loads to be transported were all controlled by Watkins. Watkins' name was on the tractor and Watkins, not JS Trucking, required the drivers to take a physical examination, a drug screen, and an orientation class before they could pull Watkins trailers while working for JS Trucking.
In addition, the agreement between appellant and JS Trucking described appellant as a self-employed truck driver responsible for her own taxes and insurance, including workers' compensation. Appellant was paid by the job and was free to work for other trucking companies while she was working for JS Trucking. Appellant was also free to decide whether or not to take a route and had at times declined to take a route without any penalty.
We therefore find that the trial court properly found that appellant was an independent contractor and properly entered summary judgment in favor of JS Trucking as to appellant's workers' compensation claim. Appellant's sole assignment of error is overuled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] Appellant testified that even though she had already taken the orientation class in the past when she was working for a company other than JS Trucking pulling Watkins trailers, Watkins required appellant to take the orientation class again before she could work for JS Trucking pulling Watkins trailers.