DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Hocking County Common Pleas Court summary judgment in favor of First Community Church, defendant below and appellee herein, on the claims brought against it by Ohio Energy Assets, plaintiff below and appellant herein. The following error is assigned for review:
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE, FIRST COMMUNITY CHURCH, AND DISMISSING ALL OF APPELLANT'S CLAIMS AGAINST APPELLEE."
 {¶ 2} Appellee owns and operates a campground in Hocking County known as "Camp Akita." On September 17, 1993, it entered into a lease with Solid Rock Energy, Inc. (Solid Rock) wherein appellee permitted Solid Rock to drill and to develop oil and gas wells on the Camp Akita grounds. The lease provided, in pertinent part, that appellee retained the right to approve all proposed "drill sites" on the grounds, but that such consent would not be "unreasonably withheld."
 {¶ 3} In 1997, Solid Rock entered into a "verbal" agreement with appellant whereby appellant agreed to drill several wells for Solid Rock at Camp Akita.[1] Two of those wells were productive and were later assigned to appellant.[2] Arrangements were made for appellant to drill more wells at Camp Akita but appellee prohibited drilling on seven (7) proposed sites. Appellant nevertheless drilled other, successful, wells, none of which were transferred to appellant pursuant to its agreement with Solid Rock.
 {¶ 4} Appellant commenced the instant action on March 7, 2002 and alleged that appellee and Solid Rock breached the original oil and gas lease by: (1) not allowing appellant to drill additional wells on the campsite, and (2) not transferring the wells which were successfully drilled. Appellant demanded, inter alia, an order to compel appellee "to immediately approve" its proposed well sites and to assign to it all interests in the working wellsites. Appellee and Solid Rock both denied liability.
 {¶ 5} Appellee filed a motion for partial summary judgment on May 14, 2002 and argued that no genuine issues of material fact surrounding the claims and that it was entitled to judgment on those claims as a matter of law. Specifically, the church argued that appellant could not sue for breach of the oil and gas lease because that lease was between appellee and Solid Rock. Thus, the church argued that appellant was not a party, was not in privity to the lease and was not an intended third party beneficiary. In support of its motion, appellee cited to the original instrument (which did not specify appellant as a party) and an affidavit from Jerry C. Olds. In the affidavit, Olds stated that he helped to negotiate the lease for appellee and, at that time, there was no intention for appellant "to have any involvement with the lease."
 {¶ 6} Appellant argued that it was in privity of contract with appellee by virtue of a lease assignment from Solid Rock. This so-called "assignment" was, however, nothing more than a letter from Jerry C. Olds to several principals who worked for appellant. After discussing the assignment of several wells appellant had previously drilled for Solid Rock, the letter stated, inter alia, that appellant would "have the right to continue drilling additional wells under the terms and conditions" of the original lease. An affidavit from Nancy Melville, President of appellant, characterized this letter as an assignment of Solid Rock's rights under the lease to appellant.
 {¶ 7} The trial court was not persuaded and, on March 14, 2003, granted appellee's motion for partial summary judgment and dismissed the claims. The court filed a nunc pro tunc entry on April 9, 2003 and determined that "no just reason for delay" existed. This appeal followed.
 {¶ 8} Appellant argues in its assignment of error that the trial court erred in granting appellee's motion for summary judgment. We disagree.
 {¶ 9} Our analysis begins from the fundamental premise that appellate courts review summary judgments de novo. See Broadnax v. GreeneCredit Service (1997), 118 Ohio App.3d 881, 887, 694 N.E.2d 167; CoventryTwp. v. Ecker (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327; Maust v.Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765. In other words, we afford no deference to a trial court's decision, seeHicks v. Leffler (1997), 119 Ohio App.3d 424, 427, 695 N.E.2d 777; Dillonv. Med. Ctr. Hosp. (1993), 98 Ohio App.3d 510, 514-515, 648 N.E.2d 1375;Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-412, 599 N.E.2d 786, and conduct our own independent review to determine if summary judgment is appropriate. Woods v. Dutta (1997), 119 Ohio App.3d 228, 233-234,695 N.E.2d 18; Phillips v. Rayburn (1996), 113 Ohio App.3d 374, 377,680 N.E.2d 1279; McGee v. Goodyear Atomic Corp. (1995),103 Ohio App.3d 236, 241, 659 N.E.2d 317.
 {¶ 10} Summary judgment under Civ.R. 56(C) is appropriate when the movant can demonstrate that (1) there are no genuine issues of material fact, (2) it is entitled to judgment in its favor as a matter of law, and (3) reasonable minds can come to only one possible conclusion and that conclusion is adverse to the opposing party — said party being entitled to have the evidence construed most strongly in its favor.Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370,696 N.E.2d 201; Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385,667 N.E.2d 1197; Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66, 375 N.E.2d 46. We further note that the party moving for summary judgment is the one who bears the initial burden of showing that there exists no genuine issue of material fact and that it is entitled to judgment in its favor as a matter of law. See Vahila v.Hall (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164; Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Once that burden is met, the onus shifts to the non-moving party to provide evidentiary materials in rebuttal. See Trout v. Parker (1991), 72 Ohio App.3d 720, 723,595 N.E.2d 1015; Campco Distributors, Inc. v. Fries (1987),42 Ohio App.3d 200, 201, 537 N.E.2d 661; Whiteleather v. Yosowitz
(1983), 10 Ohio App.3d 272, 275, 461 N.E.2d 1331. With these principles in mind, we turn our attention to the case at bar.
 {¶ 11} Appellant's claims are based on the 1993 oil and gas lease between appellee and Solid Rock. As the party moving for summary judgment, appellee had the initial burden to demonstrate that appellant had no basis for recovery under that lease. Appellee carried that burden by showing appellant was not a party to the lease, was not in privity of contract with a party to the lease and was not an intended third party beneficiary of the lease.
 {¶ 12} Consequently, the burden then shifted to appellant to produce evidentiary materials to show either that it is in privity of contract with appellee or that it is an intended third party beneficiary to the lease. We conclude, as did the trial court, that appellant failed to carry that burden.
 {¶ 13} Appellant did not argue during the trial court proceedings that it was a third party beneficiary to the oil and gas lease. Instead, appellant based its claims on a purported assignment of Solid Rock's interests under that lease. Appellant did not produce any formal written assignment, but claimed that the language of a 1998 letter to Nancy Melville and E.C. Redman amounted to an assignment:
"Dear Nancy and Ed:
This letter is to confirm our verbal agreement covering the oil and gas lease Solid Rock Energy, Inc. (Solid Rock) has with the First Community Church concerning lands in Marion Twp., Hocking Co., Ohio, known as `Camp Akita.' * * * Under our above mentioned verbal agreement, Ohio Energy Assets, Inc. (OEA) and Redman have caused 3 wells to be drilled. Two of these wells (#2 #3) are producing and assignments have been made. The third well (#4) has been drilled but a decision to plug the well has not as yet been made. The assignment in this well will be made to you when it is completed. If it is plugged, no assignment will be necessary.OEA and Redman have the right to continue drilling additional wells underthe terms and conditions of the attached lease provided that Solid Rockreceive $15,000 for each additional location on the subject lease, priorto spudding." (Emphasis added.)
This letter was marked "approved" by appellant and Solid Rock. Appellee was not a party to the letter.
 {¶ 14} For the following reasons, we agree with the trial court that this letter did not constitute an assignment to appellant of Solid Rock's interests under the lease. First, the letter is not labeled as an assignment and does not purport to be one. Second, the letter does not refer to any assignment of lease — only an assignment of individual wells drilled under the lease. Third, the letter is not recorded as would be required of an assignment of an oil and gas lease.[3] Fourth, the letter was not approved by appellee and no other evidence was adduced to show that appellee consented to any assignment.[4] Accordingly, we believe that this letter is not an assignment of the lease and cannot reasonably be construed as one. Absent such an assignment, appellant is not in privity of contract with appellee and cannot bring an action for breach of the oil and gas lease.[5]
 {¶ 15} Appellant counters that it was unable to prepare and to record a formal assignment of the lease because appellee is unreasonably withholding consent to such an assignment. We are not persuaded by that line of reasoning. We note that no indication exists to establish that Solid Rock wanted to assign its interests to appellant. The only evidence of such an intent is the aforementioned 1998 letter and that letter only refers to assignment of individual wells and that appellant could continue to drill such wells for Solid Rock. The letter gives no indication that Solid Rock intended to assign all of its interests under the lease. If Solid Rock had intended to assign all its interests to appellant, then appellant should have adduced evidentiary materials to show that intent. No such materials were submitted and, thus, it is irrelevant whether appellee acted reasonably.
 {¶ 16} For all these reasons, we find no merit in the assignment of error and it is accordingly overruled. We hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
Evans, P.J. Kline, J., Concur in Judgment Opinion.
[1] The gist of the "verbal agreement" was apparently set out in a letter dated December 2, 1998 which stated that appellant would drill the wells at its own cost and, if the wells were productive, would receive a 91.25% working interest therein.
[2] Another well drilled by appellant was, apparently, dry and was "plugged" with no assignment being made.
[3] R.C. 5301.09 requires that "[a]ll leases, licenses, and assignmentsthereof, or of any interest therein, given or made concerning lands or tenements in this state, by which any right is granted to operate or to sink or drill wells thereon for natural gas and petroleum or either, or pertaining thereto, shall be filed for record . . ." (Emphasis added.)
[4] The original oil and lease provided that Solid Rock could not "assign or sublease . . . without the prior written consent of the lessor [appellee]."
[5] Generally speaking, contractual privity is the sine qua non of actionable breach. See Mahalsky v. Salem Tool Co. (C.A. 6 1972),461 F.2d 581, 584 (Ohio law recognizes no action for breach of contract absent privity); also see Cincinnati, Hamilton Dayton RR. Co. v.Metro. Nat. Bank (1896), 54 Ohio St. 60, 68, 42 N.E. 700 (there can be no cause of action upon a contract unless there is privity of contract between the obligor and the party complaining); Vought v. Columbus,Hocking Valley Athens RR. Co. (1898), 58 Ohio St. 123, 50 N.E. 442, at paragraph two of the syllabus (a party cannot, for his own benefit, insist upon the performance of a contract between others to which he is not a party or privy).