OPINION
{¶ 1} Defendant-appellant, Michael D. Wood, appeals the decision of the Madison County Court of Common pleas involving a business agreement and personal guaranty with plaintiff-appellee, FPC Financial dba Farm Plan Corporation ("Farm Plan"). We reverse the decision of the trial court.[1] *Page 2 
 {¶ 2} Wood was the general manager and a corporate officer of River Valley Coop., Inc., a merchant of agricultural equipment and supplies. Farm Plan provides a service for farmers and merchants to manage their agricultural business and retail operations. Farm plan issues credit accounts to farmers whereby the farmers can finance purchases of equipment and supplies with local merchants. Farm Plan then pays the merchants directly and receives payments on the credit accounts.
 {¶ 3} In July 2000, Farm Plan entered into a business agreement with River Valley.
The terms and conditions of the arrangement were set out in a written Merchant Agreement.
Under the agreement, Farm Plan would convert existing accounts that River Valley held with farmers to Farm Plan accounts. The existing accounts were converted into either "preferred" or "merchant authorized" accounts, depending on credit worthiness and history of the individual farmers. For "merchant authorized" accounts Farm Plan extends credit for the purchase, but the merchant remains liable in the event that the customer defaults. The agreement also allowed farmers who purchased goods from River Valley to set up new accounts with Farm Plan. For accounts opened as "merchant authorized," if the customer became 120 days delinquent or the account is deemed uncollectible, Farm Plan would "charge back" River Valley for reimbursement.
 {¶ 4} Wood signed the agreement as general manager on behalf of River Valley. As part of the enrollment package provided to Farm Plan, Wood also executed a "Continuing Guaranty of Obligations Arising Out of Farm Plan Merchant Agreement." In September 2003, Wood resigned his positions as general manager and corporate officer at River Valley.
River Valley subsequently stopped business operations and a number of merchant authorized accounts in the amount of $234,334.33 became delinquent. On March 21, 2005, Farm Plan brought suit against Wood for reimbursement and to enforce the personal guaranty. *Page 3 
 {¶ 5} At trial, two Farm Plan employees testified about the guaranty. David Witt, the area sales manager who worked personally with River Valley and Wood, testified that the guaranty was optional and that the merchant agreement would have been executed without it. John Dahd, a Farm Plan underwriter, testified that the guaranty was received as part of the enrollment package and Farm Plan agreed to the contract based on all of the submitted documents, including the guaranty.
 {¶ 6} Following a bench trial, the trial court held Wood liable on the guaranty, awarding Farm Plan a judgment of $234,334.33. The trial court also ruled that Wood had fraudulently conveyed a 50-acre parcel of real estate that contained his residence to the Wood Family Irrevocable Trust. As a result, the court set aside the conveyance and ordered the transfer to be vacated. Appellant timely appealed, raising two assignments of error.[2]
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED WHEN IT FOUND MICHAEL WOOD LIABLE ON THE GUARANTY WHICH WAS NEITHER NEGOTIATED, AGREED TO, OR NECESSARY TO THE CONTRACT."
 {¶ 9} In his first assignment of error, Wood argues that the guaranty was not supported by consideration and signed as a result of a mutual mistake. He cites the testimony of Farm Plan's sales representative, David Witt, who testified that Farm Plan had no expectation to obtain the personal guaranty to form the agreement. Wood also argues he signed the guaranty without having read the document.
 {¶ 10} Interpretation of a contract is a matter of law. Appellate courts will review de novo a trial court's interpretation of a contract.Latina v. Woodpath Development Co. (1991), 57 Ohio St.3d 212, 214;Hartley v. Brown Publishing Co., Madison App. No. CA2005-03-009, *Page 4 2006-Ohio-999, ¶ 16. The purpose of contract construction is to discover and effectuate the intent of the parties, and the intent of the parties is presumed to reside in the language they chose to use in their agreement. Graham v. Drydock Coal Co., 76 Ohio St.3d 311, 313,1996-Ohio-393. "Common words appearing in a contract will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph two of the syllabus.
 {¶ 11} A contract consists of an offer, an acceptance, and consideration. Bono v. McCutcheon, 159 Ohio App.3d 571, 576,2005-Ohio-299. Accordingly, Ohio courts have held the "absence of consideration to support a contract is sufficient to permit its cancellation." Software Clearinghouse, Inc. v. Intrak, Inc. (1990),66 Ohio App.3d 163, 175. As with other contracts, a guaranty is not enforceable unless supported by sufficient consideration. SolomonSturges Co. v. Bank of Circleville (1860), 11 Ohio St. 153, 168-169. In the case of a guaranty though, the benefit of the consideration need not accrue to the promisor. Restatement of Law 2d, Contracts (1981), Section 71(4). "The performance or return promise may be given to the promisor or to some other person. It may be given by the promisee or by some other person. It matters not from whom the consideration moves or to whom it goes. If it is bargained for and given in exchange for the promise, the promise is not gratuitous." Id.
 {¶ 12} Wood first argues there was no consideration for the guaranty, claiming it was neither bargained for nor negotiated. Wood first raised the issue of consideration in his pretrial statement submitted to the trial court. Wood argued, "Fundamentally there is no contract when no meeting of the minds between parties occurred * * * [Wood] was never advised of the personal guaranty, did not bargain for it on behalf of the company and thus should not be bound by its terms. Mr. Wood was simply an employee of the company with *Page 5 
no ownership interest in the co-op." Wood further argues that Farm Plan provided a general enrollment package; Farm Plan had no expectation to obtain a personal guaranty from Wood; and Farm Plan did not inform Wood that the guaranty was optional.
 {¶ 13} Appellant cites the trial testimony of David Witt, Farm Plan's area sales manager that worked directly with Wood and River Valley. At trial, Witt was questioned about the guaranty as follows:
 {¶ 14} "Q: Sir, I believe you submitted [the guaranty] to [Wood], if I understood your testimony. Why was that submitted to him?
 {¶ 15} "A: Because it is part of the enrollment packet.
 {¶ 16} "Q: If he hadn't signed this guaranty or allegedly signed this guaranty, would this packet in the Farm Plan or River Valley Co-op account have been opened with Farm Plan?
 {¶ 17} "A: Yes.
 {¶ 18} "Q: So it was optional?
 {¶ 19} "A: He signed it under his own volition.
 {¶ 20} "Q: That wasn't my question, sir. It was an optional document is what you are saying, wasn't necessary to getting this?
 {¶ 21} "A: In the case of this enrollment yes it was optional."
(Emphasis added.)
 {¶ 22} Wood argues that because the agreement would have been made without the personal guaranty, there was no consideration. He urges that the guaranty was neither bargained for nor negotiated, and he would have had to receive additional consideration in order for the guaranty to be binding.
 {¶ 23} In contrast, Farm Plan argues there was consideration. Farm Plan claims they knew the enrollment package included the guaranty and accepted River Valley as a *Page 6 
merchant based on the documents submitted. Farm Plan further urges that the agreement would not have been made absent the guaranty. Farm Plan cites the testimony of John Dahd, an underwriter for Farm Plan. Dahd testified as follows:
 {¶ 24} "Q: Was [the guaranty] received by Farm Plan in June of 2000 as part of the enrollment package that came in from River Valley Co-op?
 {¶ 25} "A: It was.
 {¶ 26} "Q: And was this guaranty bearing the name and signature of Michael Wood part of the package when Farm Plan decided to accept River Valley's application and its request for both preferred and merchant authorized accounts?
 {¶ 27} "A: Yes.
 {¶ 28} "Q: To your knowledge has there ever been since the relationship was formed between River Valley and Farm Plan, any attempt to revoke or void this personal guaranty which is plaintiffs exhibit B?
 {¶ 29} "A: No."
 {¶ 30} Farm Plan claims this testimony is evidence that there was consideration for the guaranty. Farm Plan further claims that John Dahd, not David Witt, is the individual who makes the decision to accept the contract. Finally, Farm Plan argues the extension of credit to River Valley serves as consideration.
 {¶ 31} At the end of trial, the trial judge and Farm Plan's counsel engaged in the following exchange:
 {¶ 32} "The Court: The only question I have, I did not understand in any of the prefatory statements made, as a contract was negotiated in this case was there ever to be a requirement for a personal guaranty nor did the evidence seem to suggest that a personal guaranty was intrical [sic] to the contract. In fact I think the evidence was to the contrary. *Page 7 
This contract would have been executed with or without a personal guaranty. I'm perplexed by the guaranty at this point. Is there anything that you wish to offer in that regard?
 {¶ 33} "Mr. Winner (Farm Plan's Counsel): Well, I think Mr. Dahd covered that in his testimony. I would be happy to put him on the stand.
 {¶ 34} "The Court: It's not necessary to do that. My understanding was, am I correct, in what I have said to this point that the parties never negotiated for a personal guaranty. In fact the things you would normally expect if you are asking for a personal guaranty is a financial statement and show ability to pay. I also understood from the evidence, correct me if I'm wrong, that the contract would have been executed absent a personal guaranty, it was not intrical [sic] to the contract, that is what I understood the testimony to be.
 {¶ 35} "Mr. Winner: I disagree. No one can say what would have happened if a personal guaranty had not been in the package.
 {¶ 36} "The Court: There's no question that was in the package and it was executed and sent and that became apparently part of the contract, but I thought I understood from the testimony that it was not a necessary component of the contract. You are saying the evidence supports something else?
 {¶ 37} "Mr. Winner: Yes, your honor, I am. I believe you are referring to Mr. Witt's testimony.
 {¶ 38} "The Court: Yes, I am.
 {¶ 39} "Mr. Winner: I think the evidence is clear it wasn't Mr. Witt's function or authority to make or accept[.] That was to be done in Madison and that was addressed by Mr. Dahd, that this was the package, the guaranty was part of it, and it was accepted without being a part."
 {¶ 40} Based on Wood's pretrial statement and the foregoing exchange, it is clear the trial court was aware of the consideration issue. However, the trial court did not make a *Page 8 
finding regarding consideration. The court simply cited CampcoDistributors, Inc. v. Fries (1987), 42 Ohio App.3d 200, to find Wood liable. In Campco, a lessor brought suit against the personal guarantors of a lease agreement. Id. The guarantors in Campco argued the guaranty was void because, like this case, they claimed to have not read the document before signing it. Id. The Campco court ruled the guarantors made a unilateral mistake by not reading the document and could not use their own negligence to avoid liability. Id. at 204. The court inCampco found sufficient consideration for the guaranty because the guarantors had a 30 percent ownership interest in the company leasing the property and the guaranty was an essential part of the lease agreement. Id. Based on Campco, the trial court in this case held that Wood made unilateral mistake by blindly signing the guaranty and could not avoid liability based on his personal negligence.
 {¶ 41} From a review of the record, this court must assume the trial court found consideration for the guaranty even though no specific determination was made. However, the facts in this case differ fromCampco and the trial court erred in finding Wood liable on the guaranty without first making a determination that Wood had received consideration for the guaranty.
 {¶ 42} There was no consideration for the personal guaranty in this case. We recognize there is some conflict in the testimony of Farm Plan's representatives, but only one of Farm Plan's representatives made a definitive statement about whether the guaranty was essential to the agreement. David Witt testified that the guaranty was optional and the agreement would have been executed regardless of whether a guaranty was included. Witt was the Farm Plan representative that worked directly with Wood and River Valley.
 {¶ 43} Farm Plan cited the testimony of John Dahd. Dahd merely testified though that the agreement was included with the enrollment documents. Dahd's testimony did not address whether consideration was received for the guaranty or if the agreement would have *Page 9 
been made absent the guaranty. Farm Plan's counsel even stated to the trial court about Dahd's testimony that "[n]o one can say what would have happened if a personal guaranty had not been in the package." In fact, though, David Witt did testify that the agreement would have been made regardless of whether a guaranty was included. The testimony demonstrates that there was no consideration for the guaranty because it was not necessary to form the agreement.
 {¶ 44} The trial court also noted the absence of documents that are typically expected to accompany a personal guaranty when one is an essential requirement of a contract. There is no evidence in the record that Farm Plan made a request for Wood to provide a financial statement or ability to pay.
 {¶ 45} Wood also had no ownership interest in River Valley; he was simply the general manager and a corporate officer. In essence, the guaranty made Wood personally liable for up to $1.4 million of debt for River Valley's merchant accounts even though he had no ownership in the company. As a result, the evidence supports Wood's argument that no consideration was received for the guaranty and the agreement would have been made without it. This case is distinguished from Campco because Wood had no ownership interest in River Valley and the guaranty was not essential to the formation of the merchant agreement.
 {¶ 46} Another similar case is Hughes Supply, Inc. v. Stage 1Mechanical, Inc. (May 30, 1997), Darke App. No. 1416. The court inHughes Supply held a part-time clerical employee liable on a personal guaranty. The clerical worker in Hughes Supply had no ownership interest in the company, like Wood, but the court found her liable on the guaranty based on Campco because evidence proved the guaranty was essential to the contract. Id. at 5. This case is distinguishable because the guaranty in Hughes Supply was required; the regional credit manager for Hughes Supply submitted an affidavit stating that the company *Page 10 
"would not have extended credit absent a personal guaranty." Id. In this case, the testimony demonstrated the extension of credit would have been made without the guaranty.
 {¶ 47} We recognize that "an extension of credit provides sufficient consideration to support an agreement." Barclays American/Commercial,Inc. v. ROYP Marketing Group, Inc. (1988), 61 Ohio App.3d 701, 706. But the extension of credit provided by Farm Plan in this case is consideration for the underlying merchant agreement, not the personal guaranty.
 {¶ 48} In the case at bar, the testimony and evidence demonstrate that the guaranty was optional. The agreement would have been made and the credit would have been extended regardless of whether a personal guaranty was submitted. The guaranty was optional and Farm Plan did not advise River Valley or Wood of this fact. As a result, we hold that neither River Valley nor Wood received any consideration for the guaranty.
 {¶ 49} Farm Plan places a great deal of emphasis on Wood's claim that he signed the guaranty without reading it. There is no doubt Wood signed the personal guaranty included in the enrollment packet, but there must still be consideration for it to be valid and enforceable. We also recognize that the benefit for a guaranty need not accrue to the promisor, but in this case the guaranty was not bargained for or negotiated and neither River Valley nor Wood received consideration for it. Farm Plan presented no evidence to show that the personal guaranty was essential to the agreement. The evidence presented at trial demonstrates that the agreement would have been formed regardless of whether the guaranty was submitted. Therefore, we hold that the guaranty is unenforceable due to a lack of consideration.
 {¶ 50} Wood's first assignment of error is sustained.
 {¶ 51} Assignment of Error No. 2:
 {¶ 52} "THE TRIAL COURT ERRED WHEN IT FOUND FARM PLAN HAD COMPLIED WITH THE TERMS OF THE FARM PLAN MERCHANT AGREEMENT IN OPENING AND *Page 11 
MAINTAINING RVC ACCOUNTS."
 {¶ 53} Wood argues in his second assignment of error that Farm Plan did not open the delinquent accounts in adherence to the merchant agreement and, as a result, he is not liable. In light of our disposition of the first assignment of error, Wood's second assignment of error is overruled as moot.
 {¶ 54} The judgment of the trial court is reversed and the case remanded for further proceedings consistent with this opinion.
YOUNG, J., concurs.
WALSH, J., dissents.
[1] Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.
[2] Wood does not appeal the trial court's holding that the transfer of property was a fraudulent conveyance.